UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -:

SHERRY GRIMES-JENKINS,        :      16 Civ. 4897 (AT) (JCF)

         Plaintiff,        :        REPORT AND
                            :      <u>RECOMMENDATION</u>

   - against -             :

                            :

CONSOLIDATED EDISON COMPANY OF NEW :
YORK, INC.,                  :

         Defendant.        :

- - - - - - - - - - - - - - - - - - -:

TO THE HONORABLE ANALISA TORRES, U.S.D.J.:

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/22/17

The plaintiff, Sherry Grimes-Jenkins, brings this action alleging employment discrimination, retaliation, and harassment in violation of a panoply of anti-discrimination statutes. The defendant has moved to dismiss the Amended Complaint in part and the plaintiff has cross-moved for leave to file a second amended complaint. For the reasons set forth below, I recommend that both motions be granted in part and denied in part.

<u>Background</u>

Ms. Grimes-Jenkins, a black West Indian woman, has been an employee of the Consolidated Edison Company of New York ("ConEd") since 1990. (Proposed Second Amended Verified Complaint ("Proposed SAC"), attached as Exh. B to Declaration of Hugh G. Jasne dated Dec. 23, 2016 ("Jasne Decl."), ¶¶ 10, 14).[1] She alleges

---

[1] Unless otherwise indicated, the factual allegations in the Proposed Second Amended Complaint are identical to those in the Amended Complaint.

1

that throughout her tenure at ConEd, she has been sexually harassed by ConEd employees (Proposed SAC, ¶¶ 16, 20, 26, 29, 34, 47, 57); her colleagues have made racist and sexist comments in the workplace (Proposed SAC, ¶¶ 17, 19, 22, 25, 38-39, 44, 60); she has been denied training opportunities, access to facilities, and other favorable working conditions given to male employees (Proposed SAC, ¶¶ 17, 24-26, 31-32, 40, 50); she has been demoted, denied promotions, and denied wage increases because of her race, sex, and pregnancy (Proposed SAC, ¶¶ 38, 45, 52); she has been "written up," denied training, and threatened with termination because of injuries suffered on the job and medical conditions associated with her pregnancy (Proposed SAC, ¶¶ 27, 35-36, 43); and she has been retaliated against for reporting these alleged acts of discrimination and harassment. (Proposed SAC, ¶¶ 20-21, 33, 42-44, 59). She also alleges that she was sexually assaulted by a group of ConEd employees in 1991. (Proposed SAC, ¶ 15).

On April 3, 2014, the plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") alleging sex and national origin discrimination and retaliation for reporting such discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). (Notice of Charge of Discrimination ("EEOC Charge"), attached as Exh. A to Declaration of Lorie E. Almon dated Nov. 18, 2016; Proposed SAC, ¶ 103). On April 12, 2016, the EEOC issued a Right to Sue Letter.

(Proposed SAC, ¶ 106).  The plaintiff commenced this action on June 23, 2016.

On August 30, 2016, the parties entered into a stipulation giving the plaintiff leave to file an amended complaint (Stipulation to File an Amended Complaint dated Aug. 30, 2016 ("Stipulation")), which she did on September 13, 2016.  The Amended Complaint alleges (1) discrimination based on race, national origin, sex, and religion under Title VII; the New York State Human Rights Law, N.Y. Exec. Law § 296 et seq. (the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 (the "NYCHRL") (first, second, ninth, and twelfth causes of action);[2] (2) quid pro quo harassment (sixth cause of action); (3) hostile work environment (seventh cause of action); (4) retaliation (eighth cause of action); (5) punitive damages under Title VII (tenth cause of action)[3] (6) intentional infliction of emotional

_____

[2] The plaintiff also asserts facial discrimination, disparate treatment, and disparate impact as separate causes of action. (third, fourth, and fifth causes of action).  As these are theories of discrimination, not independent causes of action, I consider them in connection with the plaintiff's discrimination claims.

[3] Because this is a damages claim, not a distinct cause of action, I do not address it at this stage of the litigation.  See Denis v. Home Depot, U.S.A., Inc., No. 10 CV 3227, 2014 WL 6632486, at *6 (E.D.N.Y. Nov. 21, 2014) ("Punitive damages are not a separate cause of action and, thus, courts generally find motions to strike punitive damages at the motion to dismiss stage to be premature.")

distress (eleventh cause of action);[4] (7) discrimination under the

Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) (the "PDA")

(twelfth cause of action); (8) discrimination under the Americans

with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA")

(twelfth cause of action); (9) discrimination under the Genetic

Information Nondiscrimination Act, 42 U.S.C. § 2000ff et seq.

("GINA") (twelfth cause of action); (10) discrimination under the

Family Medical Leave Act, 29 U.S.C. § 2601 et seq. (the "FMLA")

(twelfth cause of action); and (11) violation of the Employee

Retirement Income Security Act, 29 U.S.C. § 1132 et seq. ("ERISA")

(twelfth cause of action).

On November 18, 2016, the defendant moved to dismiss the

Amended Complaint in part, seeking dismissal of all of the

plaintiff's claims except (1) the Title VII retaliation claim and

hostile work environment claims based on race and sex to the extent

that they are based on conduct that occurred on or after June 7,

---

[4] The plaintiff brings this claim under the heading of "severe emotional distress" (Amended Complaint ("FAC"), ¶¶ 112-119), which the defendant construes as a claim for emotional distress damages, not a separate cause of action. (Defendant Consolidated Edison Company of New York, Inc.'s Memorandum of Law in Support of Its Motion for Partial Dismissal of Plaintiff's Amended Complaint ("Def. Memo.") at 5 n.6). Under the this heading, however, the plaintiff alleges that (1) the defendant engaged in "outrageous conduct" (2) "for the purpose of causing severe emotional distress," which (3) actually "caus[ed] emotional distress" that was (4) severe. (FAC, ¶¶ 114-15, 117-18). These are the elements of an intentional infliction of emotional distress claim under New York Law. See Rentas v. Ruffin, 816 F.3d 214, 227 (2d Cir. 2016)

2013; and (2) the NYSHRL and NYCHRL retaliation claims and hostile work environment claims based on race and sex to the extent that they are based on conduct that occurred on or after June 23, 2013. (Def. Memo. at 3 n.1).

On December 23, 2016, together with her opposition to the motion to dismiss, the plaintiff cross-moved for leave to file a second amended complaint. The Proposed Second Amended Complaint replaces the plaintiff's religious discrimination claim with a discrimination claim based on her ethnicity. (Proposed SAC, ¶¶ 1, 14, 62, 99). It otherwise alleges the same causes of action as the Amended Complaint, though it reorganizes the claims under different headings, recharacterizes the discrimination claims under the FMLA, the ADA, and GINA as claims for "unlawful employment practices" (Compare FAC, ¶¶ 120-24, with Proposed SAC, ¶¶ 183-230), and clarifies that the quid pro quo harassment, hostile work environment, and retaliation claims are each brought pursuant to Title VII, the NYSHRL, the NYCHRL, the FMLA, the PDA, the ADA, and GINA. (Proposed SAC, ¶¶ 128, 139, 151-52, 158, 167).

Legal Standard

A.   Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570
(2007)).  The court's charge in ruling on a 12(b)(6) motion "is
merely to assess the legal feasibility of the complaint, not to
assay the weight of the evidence which might be offered in support
thereof."  <u>GVA Market Neutral Master Ltd. v. Veras Capital Partners</u>
<u>Offshore Fund, Ltd.</u>, 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008)
(quoting <u>Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust</u>
<u>Co. of New York</u>, 375 F.3d 168, 176 (2d Cir. 2004)).  The court
must construe the complaint in the light most favorable to the
plaintiff, "taking its factual allegations to be true and drawing
all reasonable inferences in the plaintiff's favor."  <u>Harris v.</u>
<u>Mills</u>, 572 F.3d 66, 71 (2d Cir. 2009).

    B.   <u>Leave to Amend</u>

Rule 15 of the Federal Rules of Civil Procedure provides that
courts should "freely give" leave to amend "when justice so
requires."  Fed. R. Civ. P. 15(a)(2); <u>accord</u> <u>Foman v. Davis</u>, 371
U.S. 178, 182 (1962); <u>Aetna Casualty & Surety Co. v. Aniero</u>
<u>Concrete Co.</u>, 404 F.3d 566, 603 (2d Cir. 2005).  "This permissive
standard is consistent with [the Second Circuit's] 'strong
preference for resolving disputes on the merits.'"  <u>Williams v.</u>
<u>Citigroup Inc.</u>, 659 F.3d 208, 212-13 (2d Cir. 2011) (quoting <u>New</u>
<u>York v. Green</u>, 420 F.3d 99, 104 (2d Cir. 2005)).  The court has
broad discretion over motions to amend, <u>see</u> <u>McCarthy v. Dun &</u>
<u>Bradstreet Corp.</u>, 482 F.3d 184, 200 (2d Cir. 2007), and may deny

such a motion for the following reasons: (1) undue prejudice to
the non-moving party, (2) futility, (3) bad faith or dilatory
motive, (4) repeated failure to cure deficiencies by previous
amendments, or (5) undue delay, United States ex rel. Ladas v.
Exelis, Inc., 824 F.3d 16, 28 (2d Cir. 2016).

Here, the defendant opposes leave to amend on the grounds of
futility and undue prejudice. Leave to amend should be denied as
futile when the amended pleading would not survive a motion to
dismiss under Rule 12(b)(6). IBEW Local Union No. 58 Pension Trust
Fund and Annuity Fund v. Royal Bank of Scotland Group, PLC, 783
F.3d 383, 389 (2d Cir. 2015). Thus, the standard governing leave
to amend is whether the amended pleading states a claim on which
relief can be granted when all facts pled are accepted as true and
construed in the light most favorable to the plaintiff. See
Panther Partners Inc. v. Ikanos Communications, Inc., 681 F.3d
114, 119 (2d Cir. 2012) (citing Ashcroft, 556 U.S. at 678-80).
The defendant bears the burden of demonstrating that the proposed
amendment is futile. See Allison v. Clos-ette Too, LLC, No. 14
Civ. 1618, 2015 WL 136102, at *2 (S.D.N.Y. Jan. 9, 2015).

In deciding whether the party opposing amendment would suffer
undue prejudice, courts evaluate whether the amendment would "(i)
require the opponent to expend significant additional resources to
conduct discovery and prepare for trial; (ii) significantly delay
the resolution of the dispute; or (iii) prevent the plaintiff from

bringing a timely action in another jurisdiction." Hutter v. Countrywide Bank, N.A., 41 F. Supp. 3d 363, 371 (S.D.N.Y. 2014) (quoting Monahan v. New York City Department of Corrections, 214 F.3d 275, 284 (2d Cir. 2000)). Courts also consider the particular procedural posture of the case. See, e.g., Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008) ("Undue prejudice arises when an 'amendment [comes] on the eve of trial and would result in new problems of proof.'" (alteration in original) (quoting State Teachers Retirement Board v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981))); Grochowski v. Phoenix Construction, 318 F.3d 80, 86 (2d Cir. 2003) (upholding denial of leave to amend sought after discovery had closed and while summary judgment motion was pending). The non-moving party bears the burden of demonstrating that undue prejudice would result if the proposed amendment were granted. Oneida Indian Nation of New York State v. County of Oneida, 199 F.R.D. 61, 77 (S.D.N.Y. 2000).

Discussion

The plaintiff concedes that the Proposed Second Amended Complaint, rather than adding new causes of action or new factual allegations, "merely clarifies the allegations contained in the Amended Complaint" in order to plead the claims "more artfully." (Plaintiff's Memorandum of Law Submitted in Opposition to Defendant's Motion for Partial Dismissal of Plaintiff's Amended Complaint and in Support of Plaintiff's Cross-Motion to Further

Amend the Complaint ("Pl. Memo.") at 32). With the exception of the plaintiff's replacement of her religious discrimination claim with an ethnicity discrimination claim, this characterization of the Proposed Second Amended Complaint is accurate. Accordingly, with that exception, the defendant's motion to dismiss and the plaintiff's cross-motion for leave to amend present the same question -- whether the allegations in the pleadings, which are substantively identical, state claims on which relief can be granted.[5] Cf. 3801 Beach Channel, Inc. v. Schvartzman, No. 05 CV 207, 2007 WL 2891119, at *11 (E.D.N.Y. Sept. 28, 2007) (denying leave to amend where there were "serious substantive legal defects" in the original complaint and "plaintiffs' counsel [made] clear [that] an amendment would do no more than reorganize and clarify the factual allegations and legal theories already set forth in the existing Complaint").

The plaintiff alleges numerous incidents of discrimination, retaliation, and harassment dating back to 1990. For reasons that will be discussed below, the statutes of limitations on all of the plaintiff's claims -- with the exception of the ERISA claim -- bar

---

[5] The plaintiff argues that the Amended Complaint (but not the Proposed Second Amended Complaint) should be construed liberally, like a pro se pleading, because her relationship with her lawyer was "on the rocks" at the time it was filed. (Pl. Memo. at 4-5). There is no law to support this proposition. Therefore, I do not evaluate the Amended Complaint under the more generous pleading standard afforded to pro se plaintiffs.

consideration of conduct that occurred before June 7, 2013, at the earliest. Accordingly, before considering whether the allegations in the plaintiff's pleadings state claims on which relief can be granted, I will review the allegations concerning events that occurred since June 7, 2013.

The plaintiff alleges that certain conduct occurred "in 2013" without providing a specific month or day.[6] For example, in 2013, Devri Gibbs, another ConEd employee, asked a supervisor, Tye Barnes, in the plaintiff's presence if "he liked the plaintiff's 'big ass'" and "wants to fuck that big ass," to which Mr. Barnes responded, "Not everyone is into that." (Proposed SAC, ¶ 57). "Instead of action being taken in response to . . . that episode, the plaintiff was isolated from other workers[] and told not to speak to anyone or she would be written up by management." (Proposed SAC, ¶ 57). That same year, four different supervisors -- Tom McEnery, Thomas Nolan, Eric Galloza, and Cory Jaworsky -- told the plaintiff that "they rated male mechanics higher than female mechanics," calling male mechanics "top of the barrel" and female mechanics "bottom of the barrel." (Proposed SAC, ¶ 58).

In 2014, the plaintiff alleges that she "was denied the opportunity to replace a supervisor who was leaving." (Proposed

---

[6] Viewing the facts in the light most favorable to the plaintiff, I treat such conduct as timely under statutes of limitations that bar consideration of conduct that occurred before a specific date in 2013.

10

SAC, ¶ 52).  The supervisor, named Vormittagg, told her, "[Y]ou don't want this job, you have young kids and[] cannot help your family." (Proposed SAC, ¶ 52).  He then encouraged less qualified men to apply for the position.  (Proposed SAC, ¶ 52).  That same year, Mr. McEnery told other ConEd employees that the plaintiff "keeps getting pregnant so that she can get time off the job." (Proposed SAC, ¶ 60).  Meanwhile, a manager named Howie Sheard told the plaintiff that she was "put into isolation" because she was "a trouble maker" who "turns people into the EEO." (Proposed SAC, ¶ 59).  Mr. Sheard also stated, "I do not trust your ass . . . because I do not want you running to the EEO saying I tried to grab you." (Proposed SAC, ¶ 59).

In April 2015, the plaintiff was denied a request to be transferred to the Bronx -- the "most recent[]" of numerous requests to be transferred there, all of which "have been summarily and arbitrarily denied." (Proposed SAC, ¶ 21).  The plaintiff alleges that she has been making these requests regularly since 1993, when she was involuntarily transferred away from the Bronx for reporting sexual harassment by a supervisor named Nick Febrizio.  (Proposed SAC, ¶¶ 20-21).

The remainder of the plaintiff's allegations either concern conduct before June 7, 2013, or allege that certain types of conduct occurred throughout the duration of her employment without discussing specific incidents since June 7, 2013.  For example,

she alleges that "for more than 20 years, [she] has been subjected to retaliation, harassment and hostile work environment" for reporting the 1991 sexual assault (Proposed SAC, ¶ 16); that "[b]eginning in 1993 and continuing to the present time," numerous supervisors referred to black female mechanics as "going to the fields" while referring to white male mechanics as "going to the job" (Proposed SAC, ¶ 22); and that "[t]hroughout [her] employment, the standard practice at the company was to keep the medical conditions of male employees strictly confidential, while opening, revealing and discussing in public the medical conditions of female employees." (Proposed SAC, ¶ 23).

A.   Exhaustion of Administrative Remedies

As a prerequisite to bringing suit under Title VII, GINA, or the ADA, a plaintiff must first file a timely charge with the EEOC. See Chin v. Port Authority of New York & New Jersey, 685 F.3d 135, 146 (2d Cir. 2012) (Title VII); Yajaira Bezares C. v. Donna Karan Company Store LLC, Nos. 13 Civ. 8560, 13 Civ. 9123, 2014 WL 2134600, at *5 (S.D.N.Y. May 22, 2014) (GINA); Benjamin v. Brookhaven Science Associates, LLC, 387 F. Supp. 2d 146, 154-55 (E.D.N.Y. 2005) (ADA).  Accordingly, a plaintiff may only raise claims under these statutes if they were included in the EEOC charge or are "reasonably related" to it.  Deravin v. Kerik, 335 F.3d 195, 200 (2d Cir. 2003).  Because the defendant bears the burden of proving the plaintiff's failure to exhaust

administrative remedies, <u>Broich v. Incorporated Village of Southampton</u>, 650 F. Supp. 2d 234, 246 (E.D.N.Y. 2009), "a plaintiff is not required to explicitly plead or demonstrate exhaustion at the pleading stage," <u>Arnold v. Research Foundation for the State University of New York</u>, __ F. Supp. 3d __, __, 2016 WL 6126314, at *8 (E.D.N.Y. 2016).

The EEOC charge in this case, which the defendant attached as an exhibit to its motion to dismiss, only alleges sex and national origin discrimination and retaliation under Title VII. (EEOC Charge). It does not allege discrimination under GINA, the ADA, or Title VII based on race, religion, or ethnicity. Accordingly, the defendant argues that those claims are barred by the plaintiff's failure to exhaust administrative remedies. (Def. Memo. at 9-10; Defendant's Memorandum of Law in Opposition to Plaintiff's Cross-Motion to Further Amend the Amended Complaint ("Def. Opp. Memo.") at 7-8).

The plaintiff counters that the Right to Sue Letter, which she attached as an exhibit to her opposition to the motion to dismiss and cross-motion for leave to amend, satisfies the exhaustion requirement because it states that it is "issued under Title VII, the ADA, or GINA." (Right to Sue Letter, attached as Exh. A to Jasne Decl.; Pl. Memo. at 5-10). In the alternative, she argues that the claims not explicitly mentioned in the EEOC charge are reasonably related to those in the charge. (Pl. Memo.

13

at 5-10).

Although the plaintiff is not required to plead exhaustion, a court may in its discretion to convert a motion to dismiss into a motion for partial summary judgment on the issue of exhaustion of administrative remedies where both parties "submit[] and reference[] documents outside of the pleadings." Clemmer v. Fordham Bedford Community Services, No. 14 Civ. 2343, 2015 WL 273657, at *3 n.l (S.D.N.Y. Jan. 16, 2015). As both parties have submitted such documents and briefed the issue, I exercise my discretion to reach the issue here.

First, the plaintiff's attempt to rely on what appears to be boilerplate language in the Right to Sue Letter is without merit. As stated above, whether a plaintiff properly exhausted administrative remedies depends on the claims contained in the EEOC charge, not the Right to Sue Letter. There is no dispute that the charge did not raise claims under GINA, the ADA, or Title VII based on race, religion, or ethnicity.

Second, a claim is "reasonably related" to those in an EEOC charge when "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." Littlejohn v. City of New York, 795 F.3d 297, 322 (2d Cir. 2015) (quoting Deravin, 335 F.3d at 200-01). This analysis focuses on "the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct

14

about which a plaintiff is grieving." Id. (alteration in original)
(quoting Deravin, 335 F.3d at 201).  Here, the EEOC charge does
not describe the discriminatory conduct suffered by the plaintiff,
such that it could have put the EEOC on notice to investigate
claims of discrimination based on disability, genetic information,
race, religion, or ethnicity.  The mere assertion of claims based
on sex and national origin is insufficient to give the EEOC notice
to investigate claims based on different characteristics.[7]  See
Buksha v. New York City Dep't of Corrections, No. 06 Civ. 5363,
2007 WL 2947982, at *2 (S.D.N.Y. Oct. 9, 2007) (discrimination
claims "based on different characteristics" and "different acts of
alleged discrimination" are not "'reasonably related' to the
subject matter" in EEOC charges).  Therefore, I recommend that
dismissal be granted and leave to amend be denied with respect to
the plaintiff's GINA, ADA, and Title VII race, religion, and
ethnicity discrimination claims.

---

[7] Courts in this Circuit have recognized two other types of
"reasonably related" claims: (1) where "the plaintiff alleges
retaliation for filing an EEOC charge"; and (2) "where a plaintiff
alleges further incidents of discrimination carried out in
precisely the same manner alleged in the EEOC charge."  Sahni v.
Legal Services of the Hudson Valley, No. 14 Civ. 1616, 2015 WL
4879160, at *6 (S.D.N.Y. Aug. 13, 2015) (quoting Butts v. City of
New York Department of Housing, 990 F.2d 1397, 1402-03 (2d Cir.
1993)).  Neither exception is relevant here.

15

B.    Discrimination Claims

    1.    Title VII, PDA,[8] and NYSHRL

        a.    Statutes of Limitations

To bring claims under Title VII, a plaintiff must file an EEOC charge within 300 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1); National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002). The plaintiff filed her EEOC charge on April 3, 2014. Thus, her Title VII claims are barred to the extent that they are based on conduct that occurred prior to June 7, 2013, 300 days before she filed her EEOC charge.

The statute of limitations under the NYSHRL is three years. CPLR § 214(2); Taylor v. City of New York, 207 F. Supp. 3d 293, 302 (S.D.N.Y. 2016). The plaintiff's NYSHRL claims are therefore barred to the extent that they are based on conduct that occurred prior to June 23, 2013, three years before she filed her complaint.

        b.    Merits

Courts in this Circuit analyze employment discrimination claims under Title VII and the NYSHRL according to the same standard. McGill v. University of Rochester, 600 F. App'x 789,

---

[8] The PDA amended Title VII to clarify that its prohibition on sex discrimination includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k); Young v. United Parcel Service, Inc. __ U.S. __, __, 135 S. Ct. 1338, 1345 (2015). Thus, analysis of the plaintiff's PDA claims is coextensive with that of her Title VII sex discrimination claims.

790 (2d Cir. 2015); Taylor, 207 F. Supp. 3d at 303.  To survive a motion to dismiss a discrimination claim under either statute, a plaintiff must allege that she suffered an "adverse employment action" and "sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation." Littlejohn, 795 F.3d at 311; see also Taylor, 207 F. Supp. 3d at 304.  "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment" that "is more disruptive than a mere inconvenience or alteration of job responsibilities." Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012) (quoting Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006)).

Only one timely allegation in the plaintiff's pleadings merits significant discussion as a discrimination claim: thatVormittagg discouraged her from applying for a promotion to his position in 2014.[9]  To establish a prima facie case of a

---

[9] I do not analyze the denials of the plaintiff's requests to be transferred to the Bronx as a discrimination claim because she alleges that retaliation -- not discrimination based on a protected characteristic -- was the reason for the denials.  (Proposed SAC, ¶¶ 20-21).  I also do not analyze the purported statements of four supervisors that they gave male mechanics higher ratings than female mechanics as a discrimination claim because the plaintiff does not allege that she suffered tangible negative consequences from receiving such a rating.  See Siddiqi v. New York City Health & Hospitals Corp., 572 F. Supp. 2d 353, 367 (S.D.N.Y. 2008) ("A negative employment evaluation, if accompanied by negative consequences, such as demotion, diminution of wages, or other tangible loss, may constitute an adverse employment action.  However, 'negative evaluations, standing alone without any

discriminatory failure to promote, a plaintiff must show that "(1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." Barrett v. Forest Laboratories, Inc., 39 F. Supp. 3d 407, 441 (S.D.N.Y. 2014) (quoting Petrosino v. Bell Atlantic, 385 F.3d 210, 226 (2d Cir. 2004)).

The plaintiff does not allege that she actually applied for Vormittagg's position or that her application was rejected. Rather, she alleges that she was discouraged from applying while less qualified men were encouraged to apply. Though Vormittagg's statement that the plaintiff would not want the job because she needs to take care of her children would satisfy the plaintiff's burden of showing discriminatory motivation, such discouragement alone does not constitute an adverse employment action under Title VII or the NYSHRL. See Rogers v. Fashion Institute of Technology, No. 14 Civ. 6420, 2016 WL 889590, at *9 (S.D.N.Y. Feb. 26, 2016) ("[A]lthough Plaintiff claims he expressed interest in a full-time position but was told not to apply, 'a plaintiff must allege that she applied for a specific position or positions and was rejected

---

accompanying adverse results, are not cognizable.'" (citation omitted) (quoting Bennett v. Watson Wyatt & Co., 136 F. Supp. 2d 236, 247 (S.D.N.Y.2001))).

18

therefrom . . . .'" (internal quotation marks omitted) (quoting
Hughes v. Xerox Corp., 37 F. Supp. 3d 629, 643 (W.D.N.Y. 2014)));
Johnston v. Carnegie Corp. of New York, No. 10 Civ. 1681, 2011 WL
1085033, at *11 (S.D.N.Y. Feb. 24, 2011) ("Even if Defendants
discouraged Plaintiff from applying for other positions . . . ,
such discouragement would not give rise to a claim for failure to
promote."), report and recommendation adopted, 2011 WL 1118662
(S.D.N.Y. March 23, 2011).  Therefore, the plaintiff's pleadings
fail to state a timely, colorable discrimination claim under Title
VII or the NYSHRL.

       Nevertheless, the plaintiff argues that claims that accrued
before the Title VII and NYSHRL statutes of limitations are
actionable under the continuing violation doctrine (Pl. Memo. at
10-13), which provides that where "a plaintiff has experienced a
continuous practice and policy of discrimination, . . . the
commencement of the statute of limitations period may be delayed
until the last discriminatory act in furtherance of it."
Washington v. County of Rockland, 373 F.3d 310, 317 (2d Cir. 2004)
(alteration in original) (quoting Fitzgerald v. Henderson, 251
F.3d 345, 349 (2d Cir. 2001)).  The doctrine applies to claims
"composed of a series of acts that collectively constitute one
unlawful [] practice."  Gonzalez v. Hasty, 802 F.3d 212, 220 (2d
Cir. 2015) (alteration in original) (quoting Washington, 373 F.3d
at 318).  It "has generally been limited to situations where there

are specific policies or mechanisms, such as discriminatory seniority lists or employment tests." Crosland v. City of New York, 140 F. Supp. 2d 300, 307 (S.D.N.Y 2001). Accordingly, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." Morgan, 536 U.S. at 113. The doctrine applies "only if the plaintiff 'allege[s] . . . some non-time-barred acts' contributing to the alleged violation." Gonzalez, 802 F.3d at 220 (alterations in original) (quoting Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999)).

Here, the plaintiff does not allege that ConEd instituted any discriminatory policy or mechanism, much less that any non-time-barred acts contributed to such a policy or mechanism. Therefore, the continuing violation doctrine does not apply here. I recommend that dismissal be granted and leave to amend be denied with respect to the plaintiff's Title VII and NYSHRL discrimination claims.

2. NYCHRL

a. Statute of Limitations

Like the NYSHRL, the statute of limitations under the NYCHRL is three years. N.Y.C. Admin. Code § 8-502(d); Taylor, 207 F. Supp. 3d at 302. Thus, the plaintiff's NYCHRL claims are barred to the extent that they are based on conduct that occurred prior to June 23, 2013.

b.    Merits

Discrimination claims under the NYCHRL are governed by a more liberal standard than claims under Title VII and the NYCHRL. Mihalik v. Credit Agricole Cheuvreux North America, Inc., 715 F.3d 102, 109 (2d Cir. 2013).  Therefore, "even if the challenged conduct is not actionable under federal and state law, federal courts must consider separately whether it is actionable under the broader New York City standards."  Id.  "To establish a [] discrimination claim under the NYCHRL, the plaintiff need only demonstrate 'by a preponderance of the evidence that she has been treated less well than other employees because of [a protected characteristic].'"  Id. at 110 (quoting Williams v. New York City Housing Authority, 61 A.D.3d 62, 78, 872 N.Y.S.2d 27, 39 (1st Dep't 2009)); see also Taylor, 207 F. Supp. 3d at 304.  Under this standard, a plaintiff need not allege that she suffered a materially adverse employment action to plead a discrimination claim.  Mihalik, 715 F.3d at 114; Taylor, 207 F. Supp. 3d at 308.

Still, courts applying this standard "must be mindful that the NYCHRL is not a 'general civility code.'"  Mihalik, 715 F.3d at 110 (quoting Williams, 61 A.D.3d at 79, 872 N.Y.S.2d at 40). Accordingly, the NYCHRL permits defendants to establish, as an affirmative defense, "that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial inconveniences."  Id. at 111

21

(internal quotation marks omitted) (quoting <u>Williams</u>, 61 A.D.3d at 80, 872 N.Y.S.2d at 41).

The plaintiff makes numerous timely allegations that she received inferior treatment because she is a woman. These include Vormittag discouraging her from applying for his supervisory position because "you have young kids and[] cannot help your family" (Proposed SAC, ¶ 52), Mr. Gibbs' lewd remarks to Mr. Barnes in her presence (Proposed SAC, ¶ 57), and supervisors in 2013 giving female mechanics lower ratings and calling them "bottom of the barrel" in her presence. (Proposed SAC, ¶ 58). These incidents amount to more than petty slights and trivial inconveniences, as they reflect a workplace in which the plaintiff was repeatedly demeaned and discouraged from opportunities to advance in the company because she is a woman. Thus, the plaintiff's pleadings state a colorable sex discrimination claim under the NYCHRL.

The only timely allegation that the plaintiff was treated less well than other employees on the basis of race is that she and other black women were referred to as "going to the fields," whereas white men were referred to as "going to the job," throughout the duration of her employment.[10] (Proposed SAC, ¶ 22).

---

[10] Viewing the facts in the light most favorable to the plaintiff, where the plaintiff alleges that conduct occurred repeatedly and "throughout the duration of her employment," I

Though this allegation concerns only one offensive phrase that is not connected to any material adverse employment action, its arguable reference to slavery[11] makes it more than a petty slight or trivial inconvenience, particularly given that the plaintiff alleges that the phrase was used throughout her time at ConEd by more than ten different supervisors. Thus, the plaintiff's pleadings also state a colorable claim of race discrimination under the NYCHRL.[12]

As with her Title VII and NYSHRL claims, the plaintiff argues that the continuing violation doctrine permits consideration of

---

assume that at least some of the conduct occurred within the Title VII, NYSHRL, and NYCHRL limitations periods.

[11] This is the plaintiff's interpretation of the phrase, which may be accepted on a motion to dismiss. It is at least equally probable that supervisors referred to "going into the field," meaning "out of the office," a term with no connotations of slavery. Evidence of the context in which it was used will ultimately shed light on the intended meaning of the phrase.

[12] To the extent that allegations like Mr. Barnes' lewd remarks and references to the plaintiff as "going to the fields" appear to constitute harassment rather than discrimination, courts in this Circuit have recognized that "'[u]nder the NYCHRL, there are not separate standards for "discrimination" and "harassment" claims.' Instead, 'there is only the provision of the law that proscribes imposing different terms, conditions and privileges of employment based' on a protected characteristic." Johnson v. Strive East Harlem Employment Group, 990 F. Supp. 2d 435, 445 (S.D.N.Y. 2014) (citations omitted) (quoting Clarke v. InterContinental Hotels Group, PLC, No. 12 Civ. 2671, 2013 WL 2358596, at *11 (S.D.N.Y. May 30, 2013)). I analyze the NYCHRL discrimination and harassment claims separately only because the continuing violation doctrine applies in different ways to discrimination and harassment claims under the NYCHRL.

conduct that occurred before the statute of limitations. (Pl. Memo. at 10-13). The continuing violation doctrine is given a broader construction under the NYCHRL than under Title VII or the NYSHRL. Taylor, 207 F. Supp. 3d at 302-03; Mohamed v. NYU, No. 14 Civ. 8373, 2015 WL 5307391, at *3 n.8 (S.D.N.Y. Sept. 10, 2015). Under the NYCHRL, "[o]therwise time-barred discrete acts can be considered timely 'where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.'" Sotomayor v. City of New York, 862 F. Supp. 2d 226, 250 (E.D.N.Y. 2012) (quoting Fitzgerald v. Henderson, 251 F.3d 345, 359 (2d Cir.2001)). Courts tend to find that discrete instances of discrimination are sufficiently "specific and related" where they consist of the same type of conduct or where the same individual targets a plaintiff with similar discriminatory acts over time. See Taylor, 207 F. Supp. 3d at 303 (applying continuing violation doctrine where the plaintiff applied for the same position fourteen times without success); Mohamed, 2015 WL 5307391, at *3-4 (applying continuing violation doctrine to "recurring failure to pay Plaintiff higher wages"); Sotomayor, 862 F. Supp. 2d at 251 (applying continuing violation doctrine to conduct of individual defendant who "subject[ed] [the plaintiff] to an inordinate number of formal and informal

observations[] and [gave] her negative ratings" over a three-year period).

Repeated references to the plaintiff and other black women as "going to the fields" consist of the same type of conduct carried out over a long period of time by the same group of supervisors. There is no allegation that the defendant attempted to remedy this conduct, even though it persisted throughout the duration of the plaintiff's employment. Accordingly, these incidents are sufficiently specific and related to establish a discriminatory practice at ConEd under the NYCHRL's continuing violation doctrine. Use of that phrase to the plaintiff before June 2013 is actionable as part of her NYCHRL discrimination claim.

The plaintiff's remaining allegations prior to June 2013, on the other hand, concern a wide variety of discriminatory conduct carried out by a number of different individuals. Though some individuals involved in timely allegations are also involved in untimely allegations, the incidents are sporadic, and the plaintiff fails to connect the timely and untimely allegations in any meaningful way. Accordingly, the remainder of her untimely allegations are not actionable under the continuing violation doctrine, even under the NYCHRL's more lenient standard. See Mohamed, 2015 WL 5307391, at *3-4 (declining to apply continuing violation doctrine to failure-to-promote allegation where complaint did "not provide an adequate basis to determine whether

the promotion decision [was] connected to Plaintiff's timely allegations"); Dimitracopoulos v. City of New York, 26 F. Supp. 3d 200, 212 (E.D.N.Y. 2014) ("Later evaluations and letters to file by separate individuals are not part of the same continuing pattern of discriminatory conduct by a prior principal."). Therefore, I recommend that dismissal be denied and leave to amend be granted with respect to the plaintiff's race and sex discrimination claims under the NYCHRL.[13] However, with the exception of references to the plaintiff as "going to the fields" by various supervisors, conduct that occurred before June 23, 2013, should be barred by the statute of limitations.

### 3. Disparate Impact and Facial Discrimination

All of the allegations discussed above consist of disparate treatment claims, that is, that the plaintiff was "treated [] less favorably than a similarly situated employee outside [her] protected group." Graham v. Long Island Railroad, 230 F.3d 34, 39 (2d Cir. 2000). However, the plaintiff also asserts that she suffered "disparate impact" and "facial discrimination." Both of these claims are without merit. To state a prima facie claim of

---

[13] Though the plaintiff also asserts discrimination based on religion, national origin, and ethnicity, none of the plaintiff's timely allegations describes inferior treatment based on these characteristics. Therefore, dismissal should be granted and leave to amend should be denied with respect to discrimination claims based on these characteristics under Title VII, the NYSHRL, and the NYCHRL.

disparate impact, a plaintiff must "(1) 'identify a specific employment practice' or policy; '(2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two.'" Chin, 685 F.3d at 151 (first quoting Malave v. Potter, 320 F.3d 321, 326 (2d Cir. 2003); then quoting Robinson v. Metro-North Commuter Railroad Co., 267 F.3d 147, 160 (2d Cir. 2001)); see also Lewis v. City of Chicago, 560 U.S. 205, 212 (2010). Conversely, a "policy is discriminatory on its face if it expressly classifies persons on the basis of [a protected characteristic]." Correction Officers Benevolent Association of Rockland County v. Kralik, No. 04 Civ. 2199, 2011 WL 1236135, at *6 (S.D.N.Y. March 30, 2011) (quoting Hayden v. County of Nassau, 180 F.3d 42, 48 (2d Cir. 1999)). None of the plaintiff's timely allegations concerns a policy or practice implemented by ConEd that either explicitly discriminates on the basis of a protected characteristic or has a disparate impact on a protected group. Therefore, the plaintiff's pleadings do not state a claim based on either of these theories of discrimination.

### 4. ADA and GINA

Even if the plaintiff had properly exhausted administrative remedies for her ADA and GINA claims, her pleadings fail to state a discrimination claim under either statue. To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that: (1) her employer is subject to the ADA; (2) she

was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (4) she suffered adverse employment action because of her disability. McMillan v. City of New York, 711 F.3d 120, 125-26 (2d Cir. 2013). To bring claims under the ADA, a plaintiff must file an EEOC charge within 300 days of the alleged discriminatory act. Harris, 186 F.3d at 247. Thus, like the plaintiff's Title VII claim, her ADA claims are barred to the extent that they are based on conduct that occurred prior to June 7, 2013. The plaintiff fails to allege that she had a disability or that an adverse employment action was taken against her because of a disability since that date.

GINA makes it unlawful for an employer "to fail or refuse to hire, or to discharge, any employee, or otherwise to discriminate against any employee . . . because of genetic information with respect to the employee." 42 U.S.C. § 2000ff-1(a)(1). The Act defines "genetic information" as (1) an employee's genetic tests; (2) the genetic tests of the employee's family members; or (3) the manifestation a disease or disorder in the employee's family members. 42 U.S.C. § 2000ff(4). The plaintiff does not allege that anyone at ConEd had such information or that she was discriminated against because of such information. Therefore, the plaintiff fails to state a colorable discrimination claim under GINA or the ADA

C.    Retaliation Claims

As discussed earlier, the defendant does not move to dismiss the retaliation claims under Title VII, the NYSHRL, and the NYCHRL to the extent that they are based on conduct that occurred within their respective statutes of limitations, with one exception. (Def. Memo. at 3 n.1).[14]  The timely allegations of retaliation in the plaintiff's pleadings are (1) that she was denied a transfer to the Bronx in April 2015 as part of a systemic course of retaliation against her (Proposed SAC, ¶¶ 20-21); (2) that she was "put into isolation" for reporting acts of discrimination and harassment to ConEd management and to the EEOC in 2013 and 2014 (Proposed SAC, ¶¶ 57, 59); and (3) that she was told she would be "written up by management" if she told coworkers about Mr. Gibbs' and Mr. Barnes' lewd conversation about her in 2013.  (Proposed SAC, ¶ 57).  Although the defendant does not move to dismiss the timely retaliation claims in their entirety, it does move to dismiss the claims based on the denial of the plaintiff's transfer request on the ground that that denial did not constitute an adverse employment action.  (Def. Memo. at 15-16).

---

[14] The defendant "incorporates all of the arguments contained in its Motion to Dismiss into [its opposition to the plaintiff's cross-motion for leave to amend]."  (Def. Opp. Memo. at 7 n.5).  Therefore, I assume that the defendant also does not oppose leave to amend for these claims on the ground of futility.

1.   Denial of Transfer

Retaliation claims, like discrimination claims, are governed by a different standard under Title VII and the NYSHRL than they are under the NYCHRL.  See Mihalik, 715 F.3d at 113.

a.   Title VII and NYSHRL

To survive a motion to dismiss a retaliation claim under Title VII or the NYSHRL, "the plaintiff must plausibly allege that: (1) [the] defendant[] discriminated -- or took an adverse employment action -- against [her], (2) 'because' [s]he has opposed any unlawful employment practice." Vega v. Hempstead Union Free School District, 801 F.3d 72, 90 (2d Cir. 2015) (quoting 42 U.S.C. § 2000e-3(a)); accord Taylor, 207 F. Supp. 3d at 307.  The definition of "adverse employment action" sweeps more broadly in the context of retaliation claims than it does in the context of discrimination claims: "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Vega, 801 F.3d at 90 (quoting Burlington North & Santa Fe Railway Co. v. White, 548 U.S. 53, 57 (2006)).  In this analysis, "[c]ontext matters"; for example, "[a] schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children." Burlington North & Santa Fe Railway, 548 U.S. at 69.  Still, the standard is objective,

examining the impact the action would have on a reasonable employee. Id. at 68-69.

Here, the plaintiff describes the Bronx as her "home base" and explains that she made numerous requests to be transferred there. However, she fails to provide any information about how the denial of the transfer actually affected her, such that it might dissuade a reasonable employee in her shoes from reporting discrimination or harassment. This is insufficient to establish an adverse employment action in the context of a retaliation claim under Title VII or the NYSHRL. See Feliciano v. City of New York, No. 14 Civ. 6751, 2015 WL 4393163, at *7-8 (S.D.N.Y. July 15, 2015) (granting motion to dismiss Title VII and NYSHRL retaliation claims where the plaintiff "[did] not provide any information as to how the transfer impacted him").

Even if the plaintiff had sufficiently alleged an adverse employment action, her retaliation claim based on the denial of the transfer request would fail on the causation prong. "[F]or an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." Vega, 801 F.3d at 90. Here, however, the plaintiff does not tie the denial of the transfer request to the reporting of any act of discrimination or harassment. She makes only the conclusory allegation that she "has been systematically retaliated against by

[the] [d]efendant and its employees" in that all of her requests to be transferred to the Bronx have been denied since the she was transferred out of the Bronx in 1993. (Proposed SAC, ¶ 21). This is insufficient to establish the but-for causation needed to state a retaliation claim. See Feliciano, 2015 WL 4393163, at *7-8 (granting motion to dismiss where the plaintiff alleged nothing "[b]eyond the conclusory allegation that in retaliation for his complaints and prior lawsuits, Plaintiff was transferred to the Bronx"). Therefore, the denial of the transfer request does not state a colorable retaliation claim under Title VII or the NYSHRL.

### b. NYCHRL

The claim based on the denial of the plaintiff's transfer request fails for similar reasons under the NYCHRL. To state a retaliation claim under the NYCHRL, a plaintiff must show that "(1) [she] participated in a protected activity known to defendants; (2) defendants took an action that disadvantaged [her]; and (3) a causal connection exists between the protected activity and the adverse action." Taylor, 207 F. Supp. 3d at 308 (alterations in original) (quoting Fletcher v. Dakota, Inc., 99 A.D.3d 43, 51-52, 948 N.Y.S.2d 263, 269 (1st Dep't 2012)). As discussed above, the plaintiff fails to make a causal connection between the reporting of any specific act of discrimination or harassment and the denial of the transfer request. Therefore, the

denial of the transfer request also does not state a colorable retaliation claim under the NYCHRL.

## 2. Remaining Allegations

The defendant does not specify which of the remaining timely allegations it concedes is adequately pled. I therefore assume that the defendant does not move to dismiss any of the remaining timely allegations of retaliation. The plaintiff, meanwhile, argues that untimely allegations of retaliation should survive under the continuing violation doctrine. (Pl. Memo. at 10-13). This argument is without merit. The plaintiff's untimely allegations involve acts of retaliation carried out by different individuals in retaliation for the reporting of different acts of discrimination and harassment than those involved in her timely allegations.[15] (See, e.g., Proposed SAC, ¶¶ 27, 34). Thus, as alleged, the time-barred and non-time-barred acts of retaliation

---

[15] For example, Mr. Sheard, who was involved in the decision to put the plaintiff "into isolation" in 2013 and 2014 (Proposed SAC, ¶¶ 57, 59), is mentioned only once elsewhere in the plaintiff's pleadings -- as one of the supervisors who referred to the plaintiff and other black female mechanics as "going to the fields." (Proposed SAC, ¶ 22). He is not mentioned in connection with any other acts of retaliation. The same goes for Mr. Barnes, who is otherwise mentioned in connection with pre-2013 conduct only once -- for telling the plaintiff in 2012 that "no one wants you around here because you turn people in." (Proposed SAC, ¶ 56). The plaintiff also does not allege that she was "put into isolation" at any point before 2013, let alone explain what actually happened when she was "put into isolation," such that this act of retaliation might be connected to pre-2013 conduct as part of a specific policy or mechanism instituted by ConEd.

are discrete events that were not carried out pursuant to a specific policy or mechanism. I therefore recommend that dismissal be granted and leave to amend be denied with respect to the Title VII, NYSHRL, and NYCHRL retaliation claims based on all of the untimely allegations under those statutes and based on the denial of the plaintiff's transfer request in April 2015.[16] The remaining timely allegations of retaliation -- which the defendant concedes are adequately pled -- survive.

D.    Harassment Claims

      1.    Hostile Work Environment

As with the retaliation claims, the defendant does not move to dismiss the plaintiff's Title VII, NYSHRL, and NYCHRL hostile work environment claims based on race and sex to the extent that they are based on conduct that occurred within the statutes of limitations. (Def. Memo. at 3 n.1). The timely allegations of harassment in the plaintiff's pleadings are: (1) Mr. Gibbs' and Mr. Barnes' lewd conversation about the plaintiff's body in 2013; (2) Mr. Galloza, Mr. Nolan, Mr. McEnery, and Mr. Jaworsky calling female mechanics "bottom of the barrel" in 2013; (3) Mr. Sheard telling other ConEd employees that the plaintiff "keeps getting

---

[16] Although the plaintiff also alleges retaliation under the ADA and GINA, she makes no timely allegations of retaliation for reporting discrimination or harassment based on a disability or her genetic information. I address her FMLA retaliation claim later in this Report.

pregnant so she can get time off the job"; (4) Mr. Sheard telling the plaintiff, "I do not trust your ass"; and (5) numerous supervisors referring to the plaintiff and other black female mechanics as "going to the fields" throughout the duration of her employment.

Unlike with the retaliation claims, the defendant does not argue that any of the timely allegations should be dismissed. I therefore assume that the defendant considers all of the above conduct to be part of the adequately pled hostile work environment claim. Accordingly, the only question to resolve is whether the untimely conduct is actionable as part of the same hostile work environment under the continuing violation doctrine.

The continuing violation doctrine applies differently to hostile work environment claims than it does to discrimination and retaliation claims, though the standard for applying the continuing violation doctrine to hostile work environment claims is the same under Title VII, the NYSHRL, and the NYCHRL.[17] Taylor, 207 F. Supp. 3d at 309 n.10. Because "the entire hostile work

_____

[17] Still, the standard to establish the existence of a hostile work environment is more lenient under the NYCHRL than it is under Title VII or the NYSHRL. Title VII and the NYSHRL require a plaintiff to establish "severe and pervasive" harassment in the workplace. Summa v. Hofstra University, 708 F.3d 115, 124 (2d Cir. 2013) (quoting Duch v. Jakubek, 588 F.3d 757, 762 (2d Cir. 2009)). By contrast, the NYCHRL does not require a plaintiff to show severe and pervasive conduct, but only that the plaintiff was treated less well based on a protected characteristic. Mihalik, 715 F.3d at 110; see also Johnson, 990 F. Supp. 2d at 445.

environment encompasses a single unlawful employment practice,"
all of the conduct that constitutes part of the hostile work
environment, including that which occurred before the limitations
period, is actionable as long as "any act that is part of the
hostile work environment" occurred within the limitations period.
Morgan, 536 U.S. at 117-18; see also E.E.O.C. v. Bloomberg, L.P.,
751 F. Supp. 2d 628, 647 (S.D.N.Y. 2010). Under this standard, an
"offensive incident within the limitations period permits
consideration of an incident preceding the limitations period only
if the incidents are sufficiently related." McGullam v. Cedar
Graphics, Inc., 609 F.3d 70, 77 (2d Cir. 2010). This "requires
courts to make an individualized assessment of whether incidents
and episodes are related," an inquiry in which courts have
"flexibility [that] is useful in a context . . . as amorphous as
hostile work environment." Id.

The Supreme Court has held that untimely acts of harassment
are sufficiently related to timely acts where there is "evidence
from a number of . . . employees that managers made racial jokes,
performed racially derogatory acts, made negative comments
regarding the capacity of blacks to be supervisors, and used
various racial epithets." Morgan, 536 U.S. at 120; see also Rowe
v. Hussmann Corp., 381 F.3d 775, 781 (8th Cir. 2004) (where "the
same harasser . . . commit[ed] the same harassing acts . . . , the
acts before and after the limitations period were so similar in

nature, frequency, and severity that they must be considered to be part and parcel of the hostile work environment"). On the other hand, untimely acts and timely acts of harassment are not sufficiently related when they are committed by "different coworkers in a different section of the [workplace]." <u>Dziedzic v. State University of New York at Oswego</u>, 648 F. App'x 125, 128 (2d Cir. 2016).

The allegation that numerous supervisors referred to the plaintiff -- along with other black female employees -- as "going to the fields" throughout the duration of her employment consists of the same harassing conduct committed by the same group of supervisors. Therefore, allegations that this occurred prior to June 2013 are part of the same actionable hostile work environment as allegations that it occurred after June 2013.

The remaining untimely allegations in the plaintiff's pleadings, on the other hand, date back as far as 1990 and involve distinct conduct by a number of different coworkers and supervisors. To be sure, some of the people involved in timely incidents of harassment are also involved in untimely allegations. For example, in 2004, Mr. Galloza called the plaintiff "unreliable" because of her pregnancy, and in 2000, he refused to give her to access shower facilities that were used by men (Proposed SAC, ¶¶ 32, 37); in 2004, Mr. McEnery refused to work with the plaintiff on a job and stated that she "should be in the kitchen bare foot

and pregnant and have nothing to say on this job" (Proposed SAC, ¶ 38); in 2012, Mr. Barnes told the plaintiff that "no one wants you around here because you turn people in." (Proposed SAC, ¶ 56).

As the examples above demonstrate, however, the vast majority of the untimely allegations of harassment by the same people involved in timely allegations occurred nearly a decade, if not more, before the timely conduct. These acts are too sporadic to be considered actionable as part of the same hostile work environment. See, e.g., Benjamin, 387 F. Supp. 2d at 154 (six-year gap between alleged events precludes application of continuing violation doctrine on hostile work environment claim).

Moreover, the plaintiff does not allege any facts connecting Mr. Barnes' 2012 statement to the lewd conversation he had with Mr. Gibbs in 2013, as the former concerns the plaintiff turning people into the EEOC and the latter consists of sexual harassment. Nor does the plaintiff allege a plausible theory connecting the remaining untimely allegations of harassment committed by different individuals to the timely allegations in her pleadings. Therefore, with the exception of pre-2013 references to the plaintiff as "going to the fields," the continuing violation doctrine does not apply the plaintiff's hostile work environment claims. I recommend that the motion to dismiss be granted and leave to amend be denied with respect to the plaintiff's Title

VII, NYSHRL, and NYCHRL hostile work environment claims to the extent that they are based on conduct before June 7, 2013 (Title VII), and June 23, 2013 (NYSHRL and NYCHRL), with the exception that claims based on supervisors referring to black female employees as "going to the fields" before those dates should be permitted to proceed.[18]

## 2. Quid Pro Quo Harassment

"Quid pro quo harassment occurs when 'a tangible employment action result[s] from a refusal to submit to a supervisor's sexual demands.'" Brown v. City of New York, No. 10 Civ. 6491, 2011 WL 2693677, at *6 (S.D.N.Y. July 11, 2011) (alteration in original) (quoting Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 753 (1998)). In the context of a quid pro quo harassment claim, a tangible employment action means "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Schiano v. Quality Payroll Systems, Inc., 445 F.3d 597, 604 (2d Cir. 2006) (quoting Mormol v. Costco Wholesale Corp., 364 F.3d 54, 57 (2d Cir. 2004)). Although the plaintiff alleges that Mr. Barnes and Mr. Gibbs made lewd remarks about her body in her presence in 2013,

---

[18] The plaintiff makes no timely allegations of harassment based on religion, national origin, or ethnicity. Dismissal should be granted and leave to amend should be denied with respect to the hostile work environment claims based on these characteristics.

she does not allege that anyone at ConEd has made a sexual advance toward her since June 2013 or that she was retaliated against for refusing such an advance.[19] Accordingly, the plaintiff's pleadings fail to state a <u>quid</u> <u>pro</u> <u>quo</u> harassment claim.

E.    <u>FMLA</u>

Courts in this Circuit recognize two types of claims under the FMLA: interference and retaliation. <u>See</u> <u>Potenza v. City of New York</u>, 365 F.3d 165, 167-68 (2d Cir. 2004); <u>Drew v. Plaza Construction Corp.</u>, 688 F. Supp. 2d 270, 276 (S.D.N.Y. 2010). To state an FMLA interference claim, a plaintiff must allege:

> [(1)] that she is an eligible employee under the FMLA; [(2)] that the defendant is an employer as defined by the FMLA; [(3)] that she was entitled to take leave under the FMLA; [(4)] that she gave notice to the defendant of her intention to take leave; and [(5)] that she was denied benefits to which she was entitled under the FMLA.

<u>Graziadio v. Culinary Institute of America</u>, 817 F.3d 415, 424 (2d Cir. 2016); <u>accord</u> <u>Smith v. Westchester County</u>, 769 F. Supp. 2d 448, 465 (S.D.N.Y. 2011). The statute of limitations under the FMLA is two years unless the alleged violation is willful, in which case the statute of limitations is three years. 29 U.S.C. § 2617(c)(1)-(2); <u>Smith</u>, 769 F. Supp. 2d at 463. The plaintiff commenced this action on June 23, 2016. Thus, her FMLA claim is

---

[19] The plaintiff does allege that she refused "repeated sexual advances" by a supervisor named Dariene Wells from 2009 through 2011, which led to retaliation. (Proposed SAC, ¶ 47). However, this allegation is untimely.

barred to the extent that it is based on conduct that occurred before June 23, 2014, or, if any alleged conduct is willful, June 23, 2013. None of the plaintiff's allegations since June 23, 2013, concern the denial of benefits to which she was entitled under the FMLA, willful or otherwise.

To establish a retaliation claim under the FMLA, a plaintiff must show that she was punished for exercising her rights under the FMLA. <u>Hill v. New York City Housing Authority</u>, __ F. Supp. 3d __, __, 2016 WL 6820759, at *6 (S.D.N.Y. 2016). Though the plaintiff alleges that Mr. McEnery complained that the plaintiff "keeps getting pregnant so she can get time off the job" in 2014 (Proposed SAC, ¶ 60), she does not allege any instance within the statute of limitations in which an adverse action was taken against her for taking or attempting to take family or medical leave. Thus, I recommend that dismissal be granted and leave to amend be denied with respect to the plaintiff's FMLA claims.

F.   <u>Intentional Infliction of Emotional Distress</u>

To establish liability for intentional infliction of emotional distress ("IIED"), a plaintiff must prove that the defendant engaged in "'(1) extreme and outrageous conduct' with the '(2) intent to cause severe emotional distress,' that there was '(3) a causal connection between the conduct and the injury,' and that '(4) severe emotional distress' resulted." <u>Rentas</u>, 816 F.3d at 227 (quoting <u>Bender v. City of New York</u>, 78 F.3d 787, 790

41

(2d Cir. 1996)).  The statute of limitations for IIED claims is
one year.  CPLR § 215(3); <u>Rentas</u>, 816 F.3d at 226.  Thus, only
conduct that occurred on or after June 23, 2015, may be considered
part of the plaintiff's IIED claim.  Not a single allegation in
the plaintiff's pleadings, however, concerns conduct that occurred
on or after that date.[20]  Therefore, I recommend that dismissal be
granted and leave to amend be denied with respect to the
plaintiff's IIED claim.

G.    <u>ERISA</u>

The plaintiff does not expressly state the section of ERISA
under which she brings her claims.  She alleges that ConEd "engaged
in practices and acts and policies in which [the] [p]laintiff[]
directly and indirectly suffered loss of benefits as to pensions
and retirement plans."  (Proposed SAC, ¶ 225).  Thus, her claim is
properly characterized as a claim "to recover benefits due to [her]
under the terms of [her] plan[] [and] to enforce [her] rights under
the terms of the plan" under 29 U.S.C. § 1132(a)(1)(B).

---

[20] Even assuming that at least one of the references to the
plaintiff as "going to the fields" occurred within the statute of
limitations, the plaintiff does not allege any emotional distress
within the limitations period.  The general allegation that such
remarks were made throughout the duration of the plaintiff's
employment is not enough to survive a motion to dismiss this
"highly disfavored cause of action."  <u>De Sesto v. Slaine</u>, 171 F.
Supp. 3d 194, 201-02 (S.D.N.Y. 2016) (quoting <u>Guan N. v. NYC Dep't
of Education</u>, No. 11 Civ. 4299, 2013 WL 67604, at *25 (S.D.N.Y.
Jan. 7, 2013)).

"ERISA does not expressly provide a statute of limitations for civil enforcement actions, so the most similar state statute of limitations applies to most ERISA claims . . . ." Bilello v. JPMorgan Chase Retirement Plan, 607 F. Supp. 2d 586, 592 (S.D.N.Y. 2009). In New York, claims under Section 1132(a)(1)(B) are subject to a six-year statute of limitations, which is inferred from the statute of limitations for breach of contract claims under CPLR § 213. Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan, 572 F.3d 76, 78 (2d Cir. 2009); Bilello, 607 F. Supp. 2d at 592. Therefore, the plaintiff's ERISA claim is barred to the extent that it is based on conduct that occurred prior to June 23, 2010, six years before she commenced this action.

None of the plaintiff's allegations since June 23, 2010, concern the denial of benefits due to her under the terms of an employee benefit plan. Although the plaintiff attached a letter to her cross-motion for leave to amend that provides dates on which she took leave in connection with the calculation of her pension benefits (Letter of Rosann C. Milian dated Dec. 7, 2016, attached as Exh. C to Jasne Decl.), neither of her pleadings explains the significance of this letter. Therefore, I recommend that dismissal be granted and leave to amend be denied with respect to the plaintiff's ERISA claim.

H.    Undue Prejudice

As for the claims for which leave to amend is not futile, the

43

defendant argues that permitting amendment would be unduly prejudicial because the "[d]efendant should not be forced to expend resources and bear the cost of filing a second motion to dismiss" so that the plaintiff may file "a slightly tidier complaint." (Def. Opp. Memo. at 9). However, the plaintiff's motion for leave to amend resolves the exact same issue that would be resolved by a motion to dismiss -- whether the Proposed Second Amended Complaint states claims on which relief can be granted. The proposition that the defendant would need to expend additional resources to file a motion addressing the identical legal question addressed here is dubious. Moreover, this is not a situation where permitting amendment would require significant additional discovery or where the plaintiff is attempting to ambush the defendant with new claims on the eve of trial. Discovery has not yet started, and both parties acknowledge that the Proposed Second Amended Complaint raises the same claims as the Amended Complaint. This leaves the defendant with only bare "[a]llegations that an amendment will require the expenditure of additional time, effort, or money," which "do not [themselves] constitute undue prejudice." A.V.E.L.A. v. Estate of Monroe, 34 F. Supp. 3d 311, 318 (S.D.N.Y. 2014) (alterations in original) (quoting A.V. by Versace, Inc. v. Gianni Versace S.p.A., 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000)). Therefore, leave to amend should not be denied on the basis of undue prejudice.

I.     Attorneys' Fees

The plaintiff requests that she be awarded attorneys' fees in the event that she is ruled to be a prevailing party on any of her claims. (Pl. Memo. at 30-31). I have made no such recommendation here, nor is it possible for a plaintiff to be deemed a prevailing party on a motion to dismiss or motion for leave to amend. Therefore, the request for attorneys' fees should be denied.

J.     Leave to Replead

"[I]t is the usual practice . . . to allow leave to replead" when a complaint is dismissed for failure to state a claim upon which relief can be granted. Cruz v. TD Bank, N.A., 742 F.3d 520, 523 (2d Cir. 2013) (per curiam); Woodward v. Morgenthau, 740 F. Supp. 2d 433, 441 (S.D.N.Y. 2010). Leave to replead may be denied, however, where a court has previously identified deficiencies in the pleadings and the deficiencies remain uncorrected in subsequent pleadings. Official Committee of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 168 (2d Cir. 2003); see also Foman, 371 U.S. at 182. Although the plaintiff previously amended her complaint and conceded that some of the claims in her original complaint were deficiently pled (Stipulation), this is the first time that a court has identified the deficiencies in her pleadings. Therefore, I recommend giving the plaintiff leave to replead one more time to cure the deficiencies identified above. However, leave to replead should

not be granted on the plaintiff's GINA, ADA, and Title VII claims based on race, religion, and ethnicity, as further amendment could not cure the plaintiff's failure to exhaust administrative remedies on these claims.

Conclusion

For the reasons discussed above, I recommend that the defendant's motion to dismiss (Docket No. 21) and the plaintiff's cross-motion for leave to amend (Docket no. 33) each be granted in part and denied in part. Specifically, I recommend that dismissal be granted and leave to amend be denied with respect to all of the plaintiff's claims except:

1. Race and sex discrimination claims under the NYCHRL to the extent that they are based on conduct that occurred on or after June 23, 2013, except that references to the plaintiff as "going to the fields" before that date are actionable under the continuing violation doctrine.

2. Retaliation claims under Title VII based on conduct that occurred on or after June 7, 2013, and under the NYSHRL and NYCHRL based on conduct that occurred on or after June 23, 2013, except that the denial of the plaintiff's transfer request in April 2015 is not actionable under any statute.

3. Hostile work environment claims based on race and gender under Title VII based on conduct that occurred on or after June 7, 2013, and under the NYSHRL and NYCHRL based on conduct that occurred on or after June 23, 2013, except that references to the plaintiff's as "going to the fields" before that date are actionable under the continuing violation doctrine.

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Analisa Torres, Room 2210, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York, 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          May 22, 2017

Copies transmitted this date to:

Hugh G. Jasne, Esq.
Jasne & Florio, LLP
30 Glenn St., Suite 103
White Plains, NY 10603

Scott Rabe, Esq.
Lorie E. Almon, Esq.
Joanna S. Smith, Esq.
Seyfarth Shaw LLP
620 Eighth Ave.
New York, NY 10018