Jasne & Florio, L.L.P.
Attorneys for Plaintiff
30 Glenn Street - suite 103
White Plains, New York 10603
914 997-1212
hgj@jasneflroio.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| SHERRY GRIMES-JENKINS, | : | Civil Action No: 1:16-cv-04897 |
| | : | (AT) (JCF) |
| Plaintiff, | : | |
| | : | |
| | : | HON.:  A. TORRES, U.S.D.J. |
| -against- | : | HON.:  J. C. FRANCIS, IV, U.S.M.J. |
| | : | |
| CONSOLIDATED EDISON COMPANY | : | **Plaintiff hereby submits a Demand for** |
| OF NEW YORK, INC., | : | **Trial by Jury accompanying this Pleading** |
| | : | |
| Defendant. | : | |

------------------------------------------------------------------------------------------

### PLAINTIFF'S SECOND AMENDED VERIFIED COMPLAINT

Plaintiff, SHERRY GRIMES-JENKINS, by and through her attorneys, JASNE & FLORIO,

L.L.P., as and for a Second Amended Verified Complaint against the Defendant, CONSOLIDATED

EDISON COMPANY OF NEW YORK, INC., respectfully set(s) forth and allege(s) as follows:

### NATURE OF ACTION

1.    This complaint amends the prior complaint in accord with the decision of Hon. J. C. Francis

IV, USMJ dated May 22, 2017, as to an action brought pursuant to the New York State

Human Rights law, N.Y. Exec. Law §§ 290 to 297; the New York City Human Rights law,

N.Y. City Admin. Code §§ 8-101 to 131; and  Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e-2 et seq., to recover money damages for retaliation, discrimination based

upon race and sex, harassment and unlawful employment practices.

2.      At all times herein, the employees and agents of the Defendant corporate entity engaged in

a repeated practice of discrimination, harassment and various unlawful employment practices

against the Plaintiff based upon her race and sex, including but not limited to claims of

disparate treatment and a hostile work environment. Additionally, Plaintiff claims violations

of the above statutes on the basis of the continuing violation doctrine.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction pursuant to 28 U.S.C. Sections 1331 and 1332, and pursuant to

42 U.S.C. Section 2000 (e). Pendent jurisdiction is also invoked pursuant to New York City

and New York State statutes in accord with 28 U.S.C. Section 1367(a).

4.      Pursuant to 28 U.S.C. Section 1391(b) and (c), venue in this District is proper because the

Defendant's principal place of business is located in this District, the Defendant does

business within this District and because some of the causes of action, acts and omissions

complained of, occurred in this District.

## THE PARTIES

5.      At all times hereinafter mentioned, the Plaintiff SHERRY GRIMES-JENKINS (hereinafter

"Grimes" or "Plaintiff") resided in the County of Putnam, State of New York.

6.      At all times hereinafter mentioned, the Plaintiff was an employee of the Defendant

CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. (hereinafter referred to as

"ConEd" or "Defendant" or "Company").

7.      At all times hereinafter mentioned, Defendant ConEd, was and is a domestic business

corporation duly organized and existing under and by virtue of the laws of the State of New

York.

8.    At all times hereinafter mentioned, Defendant ConEd maintained its principal place of business at 4 Irving Place, New York, N.Y. 10003.

9.    At all times hereinafter mentioned, Defendant ConEd was an "employer" within the meaning of 42 U.S.C. Section 2000e of Title VII, the New York State Human Rights Law Section 292 and the New York City Human Rights Law Section 102.

## FACTUAL ALLEGATIONS RELEVANT TO ALL CAUSES OF ACTION

10.    That beginning in the year 1990 and continuing to the present time, the Plaintiff was employed by the Defendant ConEd.

11.    During the aforesaid period, the Defendant ConEd employed various supervisors, managers and human resource representatives, each of whom had immediate or successively higher authority over the Plaintiff.

12.    That during the aforesaid period, the said supervisors, managers and human resource representatives had the ability to take tangible employment action on behalf of the Defendant ConEd, such as hiring, firing, promoting, transferring, disciplining, and overseeing the daily work and assignments of employees of the Defendant employer, including the Plaintiff.

13.    That during the aforesaid period, the said supervisors, managers and human resource representatives acted within the scope of their employment, and/or duties as supervisors, managers, employees and/or agents of ConEd.

14.    That the Plaintiff is a 45 year old black West Indian female who began working at ConEd at the age of 17 in 1990. That beginning almost immediately after she started her job and continuing to the present time, she has been subjected to harassment and discrimination

because of her sex, race and ethnicity.

15.    Plaintiff has been repeatedly, intentionally and maliciously discriminated against, threatened, abused and harassed by coworkers, primarily male, but some female coworkers, supervisors, managers and human resource representatives of the Defendant, ConEd, whose harassing and discriminatory conduct has included, but was not limited to: intimidating/hostile and offensive slurs, jokes, comments and inquiries, threatening and abusive verbal communications, ridicule and insults. Plaintiff was treated differently from other employees based on her race and sex, was sexually harassed and humiliated, retaliated against, lost the opportunity for promotions, and was denied potential raises, promotions and opportunities for advancement within the Company, including management opportunities, was wrongfully given unfavorable employee evaluations and ratings, was isolated from other employees and denied training, was the subject of intimidation, was verbally threatened and was otherwise treated differently from co-workers based on her race and sex.

16.    All of these acts were routinely reported by Plaintiff to representatives and management of ConEd and to their internal Human Resources Department as well. Notably, and upon information and belief not uncharacteristically of the culture of ConEd, the internal investigations undertaken by Defendant ConEd were universally deemed unfounded.

17.    Nonetheless, the acts as set forth herein, arise from the Plaintiff suffering the aforesaid sexual abuse at the hands of co-workers, which as stated, was reported to ConEd as against the "code of silence" perpetuated and perpetrated throughout the Company.

18.    At all times herein including as to the act of the reporting of the initial acts, ConEd had a tacit policy of acceptance of such tactics of initiation or "hazing" of new employees.

19.    Upon information and belief at all times herein, including dating back to the acts for which the statute of limitations has expired, ConEd managers, supervisors, administrators and directors had actual notice of, and knowledge as to, the hazing or initiation practices regarding new employees and such was accepted and condoned.

20.    Upon information and belief at all times herein, including dating back to the acts for which the statute of limitations has expired, ConEd managers, supervisors, administrators and directors had at least no less than constructive notice of, and knowledge as to, the hazing or initiation practices regarding new employees and such was accepted and condoned.

21.    Upon information and belief at all times herein, including dating back to the acts for which the statute of limitations has expired, ConEd managers, supervisors, administrators and directors had actual knowledge of, and knowledge as to, the code of silence as to reporting such acts of hazing and such was accepted and condoned.

22.    Upon information and belief at all times herein, including dating back to the acts for which the statute of limitations has expired, ConEd managers, supervisors, administrators and directors had at least no less than constructive notice of, and knowledge as to, the code of silence as to reporting such acts of hazing and such was accepted and condoned.

23.    Upon information and belief, the reporting of the initial acts or breaking of the "code of silence" as to the initial acts perpetrated against the Plaintiff hereto, although some such acts are past the applicable statute of limitations, are the reason for the repeated acts against the Plaintiff as set forth herein forming the basis of this action.

24.    The substantial acts and instances of sexual harassment and discrimination which occurred prior to June, 2013 and therefore are outside of the applicable Statutes of Limitations under

Title VII, the NYSHRL and the NYCHRL, serve as the basis for the pattern of behavior by Defendant by and through its employees and supervisors over the course of more than 20 years, and give rise to Plaintiff's race and sex discrimination and hostile work environment claims under the continuing violation doctrine and are set forth to provide a meaningful factual background for Plaintiff's causes of action for events and occurrences that took place since June 2013.

25.     Additionally, the failure of the Plaintiff to remain silent as to all such acts in violation of the tacitly accepted and condoned culture and code of silence has served as a further basis for the current complained of acts.

**Factual History of the Racial and Sexual Harassment, Discrimination, Retaliation and Hostile Work Environment Suffered by Plaintiff Throughout the Course of Her Employment with Defendant ConEd**

26.     The acts of ConEd, as complained of herein, some of which are past the applicable Statute of Limitations, have been known, accepted and condoned by ConEd managers and directors, and have continued over time without action by ConEd as a corporate entity.

27.     Upon information and belief these same and similar antics have been perpetrated against numerous other employees without being properly, nor effectively, nor meaningfully addressed by ConEd senior management and directors.

28.     Such actions against the Plaintiff herein include, most notably, beginning in 1990 and continuing to the present time, including the period from 2013 to date, various supervisors, including but not limited to, Supervisor Tom Coyne, Supervisor Bensettler, General Manager Jimmy Minella, Section Magager George Gerbacia, Instructor Joe Abrano, Supervisor Patricia Lachardi, Supervisor Darlene Wells, Supervisor Gallozo, Thomas Nolan, Dave

Gosein, Section Manager Tony Garafallo, Section Manager Jimmy Carr, Area Manager Howie Sheard, Training Coordinator Dave Robinson, began referring to the Plaintiff, as well as other black female mechanics, as "going to the fields" or "going back to the fields", as opposed to male white mechanics who are referred to as "going to the job" or "going back to the job". It was the obvious long-term policy and custom of the management of ConEd to differentiate and distinguish between the groups based upon their race and heritage by reference to slavery and the plantation era imagery and rhetoric of a "field hand" returning to work in the field.

29.    Additionally Plaintiff was routinely denied courtesies such as transfers which upon information and belief were, and are routinely granted, such denial being without basis.

30.    Additionally Plaintiff was routinely transferred as a form of retaliation to "make her life more difficult".

31.    Additionally Plaintiff was routinely threatened to be transferred in a manner calculated to in actuality make her life more difficult.

32.    The past actions perpetrated against the Plaintiff, for which she refused to remain silent, initially occurred in the Spring of 1991, when a group of employees of the Defendant, namely Michael Butchar, Charlie Thompson, Joe Tambini and Frank Morgan, turned off all the lights in the building at the Hellgate Substation in the Bronx, surrounded the Plaintiff in one of the rooms at the substation, pushed her up against a table and sexually assaulted the Plaintiff which included the physical touching of sensitive parts of the body of the Plaintiff.

33.    Upon information and belief, subsequently these individuals were overheard by a female co-worker named Joanna Schaffer bragging about what they did to the Plaintiff and Joanna

Schaffer reported the incident to Pamela Delasanno, the EEO Officer at the company. The incident was also reported to the Shop Steward, Rodney Mullings, and to supervisor Tom Coyne and the General Manager, Jimmy Minella and section manager George Gerbacia.

34. ConEd took no action as to the aforesaid incident.

35. Rodney Mullings, Shop Steward, said to the Plaintiff "I do not see your problem, you act like no one has ever touched your ass before".

36. Thereafter, for more than 20 years, the Plaintiff has been subjected to retaliation, harassment and hostile work environment because of the reporting of this incident.

## FACTUAL BACKGROUND

37. Although background information is required for context, many such incidents as set forth herein are past the applicable Statute of Limitations , however by way of example and for background purposes, during the period of 1990 through 1993, while working for the company at Hellgate and Parkchester, male co-employees were provided with a male only site bathroom, male only facilities in which to change clothes, and an employee trailer in which the male employees could take brakes and eat lunch. Plaintiff was not provided with any facilities appropriate for a female and was specifically denied access to the bathroom, the male only employee trailer and otherwise denied access to any male only facilities. That situation was reported by the Plaintiff to supervisors Ivan Kimble, Tom Coyne, Bensetlier, Nick Febrizio and General Manager Jimmy Minella. Also during said period, Plaintiff was repeatedly told by co-employees and supervisors, including but not limited to Paddy Duggan, Andy Marino, Charlie Thompson, Ralph Gaverez and Bobby Parsons, that she was not wanted on the job, indeed that all females were not wanted on the job and was ordered to

engage in activities not appropriate for her level of seniority. Supervisors Tom Coyne and Bensettler trained male employees on how to read drawings, but denied that training to the Plaintiff. Plaintiff was told that the male employees "left their wives home to come to work and they shouldn't have to be bothered working with women". During said period, Billy Rush, Odell, Jeff Danne, Omar Simmonds, Rinaldo Brown, Wright, Diaz, Tom McEnery, Mike Lentini, Frank Morgan, Michael Butchar, Rudy Seeloch, Alfred Incle and many more were assigned to certain jobs that were denied to the Plaintiff because of her sex, and she was not given the same opportunities and support from the aforementioned supervisors.

38. Further, in 1991 Tom Mcenry was hired and he, along with co-worker Paddy Duggan refused to work with the Plaintiff because she had filed a complaint with the ConEd Equal Employment Opportunity Office (hereinafter referred to as the "ConEd EEO") and made statements such as "there is a girl on the job" and "she turns people into the EEOC".

39. In July of 1991 one of the co-workers described the Plaintiff as "black trash". Another co-worker, Earl Shields, told the Plaintiff, "they are looking to fire you so you better be careful kid". Plaintiff was told by Paddy Duggan that they did not want females on the job to nag them and that they shouldn't have to be bothered working with women.

40. In December of 1992 at the Hellgate Substation, supervisor Nick Frebrizio repeatedly made sexual advances to the Plaintiff, asking if he could come to her apartment and stating that he was sexually attracted to her and wanted to have sex with her. When Plaintiff refused those advances, Frebrizio became angry and upset and thereafter began harassing her on the job and writing her up for infractions on the job that she had not committed. A meeting was held that year in which Frebrizio admitted to Shop Steward Robert Parsons that he had made

sexual advances to the Plaintiff. At that meeting, Frebrizio stated that he was "uncomfortable" around the Plaintiff and that she needed to be transferred to a different location. Shortly thereafter the Plaintiff was transferred to the 179th Street station and, in early 1993, Plaintiff was transferred to a less desirable Manhattan based location, from her original Bronx based location, all due to retaliation because of the reporting of Febrizio's sexual harassment.

41.     Since the 1993 transfer and continuing up to the present time, most recently in April of 2015, Plaintiff has made numerous requests to be transferred back to her Bronx home base to both the Human Resources Department at ConEd and to her supervisors, including General Manager Bruce Gavioli, Union local 1 & 2. Over almost a twenty-seven (27) year period, all requests have been summarily and arbitrarily denied.

42.     The timing of the denials of Plaintiff's requests for transfers too closely coincide with many of Plaintiff's complaint to both the Human Resources Department at ConEd and to her supervisors to not be deemed directly retaliatory in nature.

43.     As to such retaliation, after complaining about termites and mouse droppings on her desk at the 42nd Street Station on September 17, 2013, Plaintiff was retaliated against.

44.     On December 4, 2013, Plaintiff's managers called a meeting to discuss Plaintiff's transfer request which, upon information and belief, was held at Astor place with Galloza, Nolan and Shop Steward Andrew Boudreaux. Eric Galloza told Plaintiff that if she kept asking for a transfer or complained about anything he was going throw her "back in the field".

45.     On September 17, 2013, Plaintiff made a complaint to her Safety Representative, Walter Lyon, regarding the fact that supervisor Tye Barnes hadn't handled her complaint according

to procedures and Plaintiff was thereafter retaliated against even heavier. When Plaintiff asked for a transfer back to Bronx/Westchester, she was, instead, sent to Astor Substation, a few blocks from the 42nd Street Station. Notably, Eric Galloza stated in a sarcastic tone to the Plaintiff "we just moved you" and yet, Plaintiff's request for a transfer to Bronx/Westchester was never granted.

46. On November 6, 2013, Plaintiff complained to Jennifer Flynn in the ConEd EEO about the treatment she was receiving in regards to retaliation and discrimination. Plaintiff complained specifically in regards to receiving differential treatment (from her male co-workers) as well as being singled out and written up for lateness in inclement weather, which is against the stated ConEd policy. Although the company's policy gives employees leniency until 9AM in inclement weather, Plaintiff is routinely written up when she is late under such circumstances. Plaintiff requested a transfer or an opportunity to work a flexible schedule and spoke to the Ombudsman's office about the retaliation to which she was being subjected.

47. On November 15, 2013, John Dobresnski from Labor Relations told Plaintiff that he had received Plaintiff's request from the ConEd EEO but that her request for a transfer had been denied.

48. On November 20, 2013, after making complaints to a General Manager and to the ConEd EEO about the way Plaintiff was being treated, Supervisor Nolan Thomas came to the Astor Station, and asked Plaintiff why the General Manager had only spoken to her and not to him.

49. When Plaintiff asked about her transfer request closer to Bronx/Westchester, Supervisor Thomas Nolan started yelling and said, "denied, but I can make arrangements for you to go to East River" (a/k/a "Alcatraz", a/k/a "the prison"). This Station is where ConEd puts

employees who are being "punished". Supervisor Thomas told Plaintiff "I can make it happen as soon as tomorrow. How would you like a transfer to East River?" Her transfer request was ultimately denied.

50.    Around August 1, 2014, while at Astor Substation, Plaintiff asked her Human Resources Representative, John Mak, about a transfer back to the Bronx/Westchester Station. Mak only responded, "stay out of trouble Sherry. I warned Kendra Tyrell about you, I told her you are trouble maker and you are always in trouble and you are going to keep her busy. Kendra likes to run her mouth like you.". Then he said with a smirk on his face, "I had also warned Tracy Lin [the previous Human Resources Representative] that you were trouble and to stay away from you because you like to go to EEO to complain.". Plaintiff asked Mak why he would say that and he responded, "because it is true. Stay out of trouble Sherry.". Plaintiff tried to change the subject and ask about her various transfer requests back to Bronx/Westchester due to hardship. Plaintiff explained that Bronx/Westchester was her original location and that she had only been transferred to Manhattan on what was supposed to have been a temporary basis, but was never sent back. Mak then threatened Plaintiff saying no to the request, and added, "but if you keep asking for a transfer I am going to send you to Staten Island. I also cover that area and I would let you see a real hardship. You want to go to Staten Island? It's a nice ride".

51.    On April 20, 2015, Plaintiff complained to Galloza about the hostility and hostile work environment she had endured at the Astor Substation. Plaintiff again requested another transfer to Bronx/Westchester but Galloza told her that if Plaintiff requested another hardship transfer or complained about anything he would throw Plaintiff "back to the field" and

threatened to transfer Plaintiff to the East River station. Shop Steward Pete Jacivello was present at this meeting.

52.    Immediately thereafter, on April 20, 2015, Bruce Gavioli suggested that Plaintiff put in for a transfer and Plaintiff informed him that she had already done so, however, Gavioli said he never heard about Plaintiff's request. Plaintiff informed Gavioli that Galloza had told her that Gavioli had denied her request. Upon the advice of Gavioli, Plaintiff again requested the transfer to Bronx/Westchester. Gavioli informed Plaintiff that the request had been forwarded to Human Resources, but Plaintiff never received a response.

53.    On October 28, 2015, Plaintiff had a meeting with the Labor Department including Kendra Tyrell, Ombudsman Yolanda Foley, and someone from the Diversity Department regarding Plaintiff's complaints to Galloza on April 20, 2015 and Plaintiff's request for a transfer. The transfer request was once again left unaddressed if not wholly disregarded.

54.    On June 2, 2016, Plaintiff spoke to Human Resources Representative Kendra Tyrell, Galloza and Thomas Nolan about hostility that Plaintiff faced at the Astor Station and her need for a transfer. This transfer was never granted.

55.    Most recently, on March 27, 2017, Plaintiff was denied a transfer by General Manager Thomas Karakantasis after she complained about sexual harassment. Plaintiff sent an email to her supervisor asking to meet with an internal investigator. As the to that request, General manager Thomas Karakantasis and Eric Galloza arrived at Astor Station, where the Plaintiff already was present for an "alternate emergency meeting", at which the Plaintiff was denied a shop steward and while there, the General Manager made references to the prior EEO cases that had been filed by Plaintiff and how upset he was about them Plaintiff and told the

Plaintiff that she was being thrown back into the field.

56.    In 2004, Plaintiff was told by Phil Burton outside the 42nd Street Station that "you are a woman and they will never hire you into management". When Plaintiff said that a woman can do the job, Burton laughed and said the company would use other excuses not to promote her.

57.    Plaintiff has consistently been denied training so she could advance in the company. In 2004 and 2005, she requested training from Darlene Wells and was referred to Supervisor Tony Garafalo for approval but was denied. Supervisor Phil Burton advised the Plaintiff that she was "always in trouble with area manager Garofallo", that she was "a trouble maker" and that Garofallo "wants me to send you out of here." The next day after that conversation, the Plaintiff was reassigned to the East River location.

58.    Plaintiff continued to report these incidents to the company human resource department EEO and during a meeting with EEO representative Yanis Thomas, that representative told the Plaintiff that "the guys got together and falsely accused you of making a racial slur against Meyowitz". Thomas suggested to the Plaintiff that she "go outside the company and complain because the company is not giving you fair justice and things keep coming back unfounded".

59.    In 2005 Supervisor Jimmy Carr wrote an evaluation of the Plaintiff indicating that she was "argumentative, rude and should do more leads on the job." Supervisor Dave Gosein said to the Plaintiff that she should go back to the EEO and report the incidents and retaliation by Garafalo and others because Gosein had written a good evaluation for her, but that Garafalo and others had forced him to change it to a poor one.

60.     During the period from 2006 through 2008, Plaintiff was on the Team Program in Public Affairs, but was demoted from that position because she was from a nontraditional background for women and because of the slander of her name within the company. She was told by Deloris Adams that Michael Butchar had told the manager of the Team Program that the Plaintiff was trouble and liked to turn in others to the EEO.

61.     In 2008, the Plaintiff was demoted back to the East River location. New employees Sean Green and Sean O'Brien would not work with her because they were told that she was trouble. They were told to stay away from the Plaintiff. These comments were made by supervisor Ralph Garcia and others. Garcia had shown the Plaintiff's confidential employment evaluations to the other workers and told the other workers that the Plaintiff was demoted because no one wanted to work with her and that the only reason that she was given the job in Public Affairs was to shut her up and to give them an opportunity to fire her while she was in management.

62.     Throughout her employment with ConEd, Plaintiff was passed up for jobs and promotions to which she was qualified that were given to male employees who were less qualified for the job or promotion, some not qualified at all. In 2011, Thomas Nolan was promoted into a job that the Plaintiff was more qualified for. When Plaintiff questioned that promotion she was told that she was not qualified because she had taken sick time. In 2014, Plaintiff was denied the opportunity to replace a supervisor who was leaving named Vormittagg, who told her that "you don't want this job, you have young kids and, cannot help your family". Male co-workers who were less qualified, were encouraged to apply for that position.

63.     Throughout Plaintiff's employment, the standard practice at the company was to keep the

medical conditions of male employees strictly confidential, while opening, revealing and discussing in public the medical conditions of female employees. Beginning in 1994 and 1995-1998, Plaintiff's medical conditions such as miscarriages, were several times revealed to male employees by Bobby Lyons.

64. In 1993, during Plaintiff's first pregnancy, Febrizio stated to the Plaintiff that the managers "didn't want her around and didn't know what to do with her because she was pregnant". In that year, Plaintiff was not afforded with the opportunity for training for her B title. She was also suspended 16 hours in November of 1993 because of her pregnancy. She was told by Febrizio and others that because of her pregnancy she was "a liability" if she stayed on the job.

65. After returning from pregnancy leave in 1994, at the North Queens location, Plaintiff was forced to work the night shift despite the fact that she had a newborn at home. That situation was reported to Area Manager George Gerbacia and Union representation Eddie Leighbright, but no action was taken and she was told that if she couldn't work the night shift she would be "written up" to management. Leighbright said to the Plaintiff "no one wants you here" and "everyone here feels they must walk on egg shells because you to turn people into the EEOC". Additionally, Plaintiff was told, "no one cares if you have a nursing baby and you have to work the night shift like everyone else". At that time, Plaintiff was using a pump to pump breast milk but was laughed at by co-employees, denied any facility or that purpose and was told by Eddie Leighbright "not to put that crap" in an employee refrigerator at the work site. Leighbright also told her that "no one wants you here". Plaintiff also spoke to Mechanic A Bob Avery about the night shift work and he laughed at her and said "If you

have a problem, bring your kid to work with you at night". That statement was reported to Section Manager Gerbacia, but nothing was done. To the contrary, she was given a verbal warning and Gerbacia threatened to write her up.

66. As far back as the summer of 1994, Plaintiff was once again denied training for her B title while male co-workers who had been hired after her were provided with the training and promoted.

67. Also in 1994, a co-worker Dave Gosein said to the Plaintiff, in the presence of other employees, "keep your 2 dollar ass on walking" in response to a work related question. The other employees laughed and although the incident was reported upon information and belief no action was taken by ConEd.

68. In 1994, Plaintiff was injured on the job, suffering a concussion, and was taken to the hospital by Mechanic Tony Castalano. While there Castalano told her that "no one wanted to take you to the hospital, they want you gone and say you are a trouble maker, you turn people into the EEOC and I am not supposed to speak to you." Upon her return from the hospital, she was written up, reprimanded and denied training for her B title.

69. In March of 1996, Plaintiff's co-worker Darnell Stanley warned the Plaintiff "to be careful because they don't like you and they may try to set you up". During a particularly hazardous job, working 150 feet off the ground, Plaintiff requested extra help due to her safety concerns to Gerbacia, but was denied any help and was told by Gerbacia and supervisor Robert Brantley to do the job alone. She was denied tools. Co-worker Nicole Hobbs told the Plaintiff that Nicole had overheard the supervisors planning to set her up to be injured and advised Plaintiff to be careful. Shop Steward Vinny Mazzie told the Plaintiff that "they got it in for

you, they are trying to come after you and set you up".

70.    In 1996 the Plaintiff was assigned to the Astoria Barge Station, which had no other female

workers. Astoria Barge Supervisor "Beetle Juice" Tony made many sexual advances to the

Plaintiff while on the job with her on the night shift, saying that he heard she was a model,

that she was very pretty and had a nice body, and that he wanted to have sex with her. He

tried on several occasions to get her into dark places with him, but she refused his advances.

71.    Over the course of time, upon information and belief Bettle Juice Tony became increasingly

angry and threatened the Plaintiff physically, one night Forcing the Plantiff to cut a cable

which he knew or reasonably should have known was live, at which time she was knocked

to the ground. That incident and his sexual advances were reported to supervisor Jimmy Carr

but no action was taken. Jimmy Carr told the Plaintiff that she "just can't seem to stay out

of trouble" and threatened to write up her up for the cable cutting explosion.

72.    Also in 1996, Mechanic A Kenny Meyowitz said repeatedly to the Plaintiff that "I don't want

this bitch on my job."

73.    In 1999, male employees were routinely awarded extra points on the "A Title" test so they

could pass, but Plaintiff was told by Jimmy Carr that she failed the test by .5 points and

should ask Joe Abrano for the additional .5 points. That request was summarily denied.

74.    Notably, some employees upon information and belief Thomas McEnery was awarded the

A Title without taking, let alone passing the test, stating that all he did was buy a cup of

coffee for the instructor and he passed.

75.    In August of 2000 at the 42nd Street Substation, male employees were provided with a male

only bathroom and a male only shower, but the Plaintiff and other females were denied

access to those facilities by her supervisors Jimmy Carr and Eric Galloza who told her to use the sink to wash up. Plaintiff reported that situation to Supervisor Toto who told her to use the shower but restricted the times that she could use it. Galloza found out that Supervisor Toto had allowed Plaintiff and other females including Nicole Hobbs to shower and wrote the Plaintiff up for using the shower, and also for using the showers too early, even though they had been given permission by Supervisor Toto under the theory the women would shower before the men.

76.     Subsequently, Plaintiff was refused access to the shower at the 42nd Street Station and told by Eric Galloza to walk to other facilities in the 49th Street station "that could be used by women". Although at first review this might appear innocuous, in reality not only were there two bathrooms at 42nd Street, but further, by having to travel to another location the Plaintiff would have been outside the designated wash up time.

77.     Shortly thereafter, a co-employee, Devri Gibbs arrived at the 42nd Street station, cursed at the Plaintiff, saying that the Plaintiff was "f_ _king trouble" and a "f_ _king trouble maker" begging the question of why and how Devri Gibbs even learned of this situation.

78.     Plaintiff reported the situation regarding the shower and lack of female facilities to the Department of Labor and the Department of Health and, beginning in 2001, in retaliation for those reports, Plaintiff's managers refused to provide the Plaintiff with personal days off that were being provided to male co-employees, including personal days for her wedding that were always provided to male co-employees. After returning from her honeymoon, Plaintiff was docked the three personal days she had taken by Section Manager Garofalo and charged instead with vacation days. That situation was reported to Vice President Mento Suarez, but

nothing was done to correct the problem.

79.    In March of 2003, pornographic photographs of scantily clad women were posted in the employee trailer by co-employee Roger Mahes. When Plaintiff complained to supervisor Eric Gallazo, Mahes approached the Plaintiff and cursed at her. Gallazo, rather than taking corrective action, threatened the Plaintiff and gave her a verbal warning. Shop Steward Tom Syphertt was a witness to that incident. When Plaintiff reported the incident to the company EEO, no action was taken, instead Plaintiff was refused all access to the employee trailer by Gallazo and had to eat and take breaks in her car.

80.    In June of 2003, Plaintiff was hospitalized for a medical condition associated with a complicated pregnancy and, while hospitalized, was advised by Human Resource representative Lisa Robinson that, unless she immediately signed out of the hospital and returned to work, "the company is going to panel (a term for firing an employee) you out and fire you". The HR Administrator Tim Averi told her that if she did not get back to work the company would put her on leave with no pay and panel (a term associated with termination) her out. Bill Diana at the Union Hall said that she should document what the company was doing trying to fire a pregnant woman.

81.    Against medical advice based upon those threats, Plaintiff signed out of the hospital and attempted to return to work but had significant physical difficulties while back on the job and, a few weeks after her return to work, hemorrhaged and had to be again hospitalized, for eight (8) weeks, and her baby was born premature.

82.    In September 2004, Supervisor Eric Galloza told the Plaintiff that she was unreliable because of her pregnancy and wrote that statement on an evaluation.

83.     Upon returning from maternity leave, Plaintiff was constantly discriminated against, harassed

and ostracized from other employees. She was treated differently and unequally from male

employees because of her pregnancy and maternity leave. Co-employee Thomas Mcenery

said to the Plaintiff:

> "This woman was out for a year on maternity leave and still has a job. How could she
>
> have a job? She should be in the kitchen bare foot and pregnant and have nothing to
>
> say on this job. We don't want her here and we are not listening to her. She turned
>
> a man in for pictures and left his job hanging."

84.     Co-employees Mcenery, Meyerowitz, Abe Reyes and Rodney Mullings refused to work with

her in the presence of Supervisor Galloza who just laughed and said "This is just a group of

employees giving you a piece of their minds."    This incident was reported to Human

Resources, but no action was taken. Mike Butchar said to Ray Cruz in the presence of the

Plaintiff : "What the f_ _ k does that bitch want now. I am tired of hearing that bitch's voice.

Tell her to go f_ _ k herself." Galloza told the Plaintiff that she was being denied a raise

because of her pregnancy and maternity leave.

85.     Plaintiff sustained an on-the-job injury in 2005, but was not permitted by Safety

Administrator Mike Breslin to file a workers compensation claim. When Plaintiff wrote

about that situation to Vice President Steve Quinn, she was placed in the C-6 Program and

threatened with losing her job.

86.     While on the job at the East River location in 2006, the Plaintiff overheard Kenny Hammond

telling new mechanics Vincent Logilio and Jeff Jeffers that they should stay away from the

Plaintiff because "she is nothing but trouble and will turn you in to the EEO". While on the

job at the Cherry Street location, James Johnson told the Plaintiff "these guys don't want to work with you because you will turn them into the EEO and plus they don't want a woman leading them on a job." That incident was reported to Dave Gosein and, instead of taking some corrective action Dave Gosein threatened to write her up, saying that the Plaintiff does not get along well with others.

87.    During the period from 2009 through 2011, Supervisor Dariene Wells repeatedly made sexual advances toward the Plaintiff taking her out in the company car while working and touching Plaintiff's inner thigh while talking about sexual matters, touching the Plaintiff's body while in the office and confronting the Plaintiff while in the bathroom. These advances were rejected by the Plaintiff resulting in continued harassment and retaliation. This situation was reported to Manager Gina Callendar, but no action was taken.

88.    Union Co-Chairman Abe Reyes told the Plaintiff that "you better watch your back, the game is on and her people referencing Darlene Wells are going to come after you."

89.    In the winter of 2010-2011, male co-employees, including but not limited to the Roccisano brothers, were routinely permitted to report to alternate work sites in the event of severe weather such as snow storms, however, when the Plaintiff requested the same treatment, her supervisor Darlene Wells refused and said that if the Plaintiff did not report to her assigned location she would be docked and written up. During Tropical Storm Irene Plaintiff was late for work due to the severe weather and was told by Wells that "I am docking you and if Section Manager Gina Callendar wants to remove that s_ _ t later she can do it."

90.    In 2011, Sean O'Brien, by then a shop steward, came during the night shift at the East River location to observe the Plaintiff because he "doesn't want you turning in anyone to the EEO."

91.   In October of 2011, Plaintiff was denied Bereavement time to attend the funeral of a close relative by Section Manager Gina Callendar, despite the fact that male co-employees were routinely granted such time. Callendar subsequently entered a negative verbal warning into Plaintiff's employment records stating that the Plaintiff was discourteous and disloyal to the company.

92.   During the period 2009 through 2012, the Plaintiff spoke on several occasions with the chairman of the union Rick Brown about the harassment and discrimination and he told the Plaintiff that no wanted her on the job "because you are always turning someone in to the EEO." He said that supervisors Eric Galloza and Cory Jaworsky are laughing at her and do not like her or want her on the job.

93.   In 2012, Supervisor Nolan told the Plaintiff that she is labeled as a trouble maker because she goes to the EEO. He tells the Plaintiff that he has been ordered to stay away from her.

94.   In 2012, Tye Barnes told the Plaintiff that no one wants you around here because you turn people in.

95.   Shortly thereafter, Devri Gibbs asked Tye Barnes, in the Plaintiff's presence, if he liked the Plaintiff's "big ass" and if he "wants to f_ _k that big ass". Barnes laughed and responded that "not everyone is into that". Instead of action being taken in response to the complaints of that episode, the Plaintiff was isolated from other workers, and was told not to speak to anyone or she would be "thrown back into the fields" by Eric Galloza. Co-worker Howie Sheard said that the workers and management can't trust her and that she has to be put in isolation "because they don't want you in the general population". Co-worker Walter Davis said that the employees threatened to boycott the job if she comes to their location.

96.     In June 2013, during a retirement party for Mechanic Mike Irrizary, Devri Gibbs followed

the Plaintiff around the station and in front of male mechanics shouted "Look at her big ass.

Sherry, your big ass just goes from side to side". When the Plaintiff complaint to Tye Barnes,

who was present at the party, Barnes did nothing to stop Devri Gibbs. In July 2013, Plaintiff

fell out of her chair in the lunchroom and Devri Gibbs and Rodney Braff said to other

employees, "her ass is so big, she bounced up to the ceiling and bounced a couple of times."

Plaintiff informed the Section Manager Eric Galloza, but he did nothing and instead

threatened Plaintiff to keep her mouth shut.

97.     On July 18, 2013, while Plaintiff was signing in to work, Devri Gibbs came up behind the

Plaintiff and pretended to grab and pinch her buttocks and said, "Sherry, you have a big ass."

The Plaintiff pulled Gibbs aside and asked her to stop and that she didn't like Gibbs'

comments, however, Gibbs got angry at Plaintiff and retaliated by alleging to management

that Plaintiff had joked about Barnes' stuttering. This was not true, but Plaintiff got called

into a meeting with Galloza where she was confronted about making such a joke, the actions

of Gibbs being left unaddressed, and she ultimately entered a voluntary suspension in

January of 2014.

98.     In 2013, Mechanic A McEnery, Nolan, Galloza and Jaworsky all told the Plaintiff that they

rated male mechanics higher than female mechanics, saying specifically that the males were

"top of the barrel mechanics" and that the females were "all at the bottom of the barrel".

99.     In 2014 Manager Howie Sheard said to the Plaintiff that she was put into "isolation because

the male employees don't want her in the general population because she is a trouble maker

and turns people into the EEO". He also says that "I do not trust your ass. I don't want to be

in a room with you by myself because I do not want you running to EEO saying I tried to grab you."

100.   In 2014, as well as 2015 and 2016 McEnery told other employees, including Kimberly Valenciano and Joe Lopez, in effect that the Plaintiff "keeps getting pregnant so she can get time off the job" and similar comments, and to stay away from Plaintiff because "she turns people into the EEO".

101.   That the aforesaid acts of discrimination, harassment and unlawful conduct by the supervisors, managers, officers, employees and/or agents of the Defendant, ConEd, were performed because of the race, and sex of the Plaintiff.

102.   That the Plaintiff objected to the aforesaid conduct and complained of it to ether managers, supervisory employees and officers of the Defendant.

103.   That despite those complaints, the supervisors, managers, officers, employees and/or agents of the Defendant failed and refused to take prompt and proper corrective or remedial action.

104.   That the Defendant and its upper-level supervisors had knowledge of the aforesaid conduct, ignored the said conduct and/or failed to take prompt and proper corrective and remedial measures to correct said conduct and acquiesced in the discriminatory conduct and harassment.

105.   The Plaintiff belongs to one or more protected groups.

106.   The said discriminatory practices and acts of harassment affected a term, condition or privilege of Plaintiff's employment.

107.   The Plaintiff was treated by the Defendant, its supervisors, managers, officers, employees and/or agents in a manner less favorable than others for impermissible reasons.

108. Defendant ConEd, as Plaintiff's employer, knew or should have known of the discriminatory practices and acts of harassment and repeatedly failed to take prompt and proper corrective or remedial action.

109. This systematic racial and sexual and harassment and discrimination have created and subjected the Plaintiff to a continuing hostile work environment throughout the course of Plaintiff's employment.

110. The racial and sexual discrimination towards Plaintiff has constituted a violation of the New York City Human Rights Law.

111. The retaliation to which Plaintiff has been subjected has constituted a violation of Title VII.

112. The retaliation to which Plaintiff has been subjected has constituted a violation of the New York State Human Rights Law.

113. The retaliation to which Plaintiff has been subjected has constituted a violation of the New York City Human Rights Law.

114. This hostile work environment has constituted a continuous violation of Title VII throughout the course of Plaintiff's employment.

115. This hostile work environment has constituted a continuous violation of the New York State Human Rights Law.

116. This hostile work environment has constituted a continuous violation of the New York City Human Rights Law.

117. The denial of transfer requests has been the direct and proximal result of the systematic sexual harassment, discrimination and retaliation to which Plaintiff has been subjected throughout her employment with ConEd.

118.    Upon information and belief similar acts were committed against other workers within
        ConEd, some of which were addressed by unrelated litigation on the part of such other
        individuals.

119.    This systematic sexual harassment, discrimination and retaliation has been tolerated by
        Defendant ConEd throughout the course of Plaintiff's employment.

120.    Despite the actual knowledge of these various complaints, ConEd took no action until
        judicial intervention left no alternative.

121.    Further, notwithstanding such judicial intervention, such acts continue even to this day.

122.    The failure of ConEd to address these various and repeated  acts against this Plaintiff and
        other such personnel until forced to do so was a willful, wanton, malicious and reckless
        disregard of its legally mandated obligations under Federal law.

123.    The failure of ConEd to address these various and repeated  acts against this Plaintiff and
        other such personnel until forced to do so was a willful, wanton, malicious and reckless
        disregard of its legally mandated obligations under New York State law.

124.    That as a result thereof, the Defendant ConEd, is vicariously liable to the Plaintiff for the
        discriminatory practices and acts of harassment of the Defendants supervisors, managers,
        officers, employees and/or agents.

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR RACE DISCRIMINATION
## IN VIOLATION Of SECTION 8-107 OF THE
## NEW YORK CITY ADMINISTRATIVE CODE
## (NEW YORK CITY HUMAN RIGHTS LAW)

125.    Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set
        forth herein fully at length once again.

126. That the Defendant ConEd, engaged in a practice or policy in which black employees were treated differently and less favorably than white employees.

127. That said practices and/or policy(s) were facially discriminatory.

128. That the said discriminatory practice(s) and/or policy(s) did not constitute a bona fide occupational qualification reasonably necessary to the normal operation of the Defendants' particular business or enterprise.

129. That said discriminatory practices which occurred on or after June 23, 2013 deprived or tended to deprive the Plaintiff of employment opportunities and/or otherwise adversely affected her status as an employee, because of Plaintiff's race.

130. That the aforesaid acts of discrimination and harassment against Plaintiff based on the Plaintiff's race by the Defendant, its supervisors, managers, officers, employees and/or agents that have occurred from and after June 23, 2013 has constituted an actionable harm to Plaintiff.

131. That the aforesaid acts against Plaintiff based on the Plaintiff's race by the Defendant, its supervisors, managers, officers, employees and/or agents that have occurred from and after June 23, 2013 constitute a violation of Section 8-107 of the New York City Administrative Code (otherwise known as the "New York City Human Rights Law").

132. That said violation of the New York City Human Rights Law has caused the Plaintiff to suffer sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been

unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been

actually or constructively terminated and/or discharged from employment; has had her good

name and reputation impaired by publication of the aforesaid discriminatory words and

conduct; has had her liberty interest impaired and her professional reputation and competence

impugned in such a fashion to effectively put a significant roadblock in her continued ability

to practice her profession or trade; and sustained other damages.

133.    That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in

the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR SEX DISCRIMINATION
## IN VIOLATION Of SECTION 8-107 OF THE
## NEW YORK CITY ADMINISTRATIVE CODE
## (NEW YORK CITY HUMAN RIGHTS LAW)

134.    Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set

forth herein fully at length once again.

135.    That the Defendant ConEd, engaged in a practice or policy in which female employees were

treated differently and less favorably than male employees.

136.    That said practices and/or policy(s) were facially discriminatory.

137.    That the said discriminatory practice(s) and/or policy(s) did not constitute a bona fide

occupational qualification reasonably necessary to the normal operation of the Defendants'

particular business or enterprise.

138.    That said discriminatory practices which occurred on or after June 23, 2013 deprived or

tended to deprive the Plaintiff of employment opportunities and/or otherwise adversely

affected her status as an employee, because of Plaintiff's sex.

139.    That the aforesaid acts of discrimination and harassment against Plaintiff based on the
        Plaintiff's sex by the Defendant, its supervisors, managers, officers, employees and/or agents
        that have occurred from and after June 23, 2013 has constituted an actionable harm to
        Plaintiff.

140.    That the aforesaid acts against Plaintiff based on the Plaintiff's sex by the Defendant, its
        supervisors, managers, officers, employees and/or agents that have occurred from and after
        June 23, 2013 constitute a violation of Section 8-107 of the New York City Administrative
        Code (otherwise known as the "New York City Human Rights Law").

141.    That said violation of the New York City Human Rights Law has caused the Plaintiff to
        suffer sustained conscious pain and suffering, physical injury, great mental distress, mental
        anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and
        still suffers and will continue to suffer bodily pain and mental anguish for some time to
        come; has been and will be required to seek and obtain medical care and treatment; has been
        unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been
        actually or constructively terminated and/or discharged from employment; has had her good
        name and reputation impaired by publication of the aforesaid discriminatory words and
        conduct; has had her liberty interest impaired and her professional reputation and competence
        impugned in such a fashion to effectively put a significant roadblock in her continued ability
        to practice her profession or trade; and sustained other damages.

142.    That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in
        the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR A THIRD CAUSE Of ACTION
## FOR RETALIATION IN VIOLATION OF TITLE VII

143.    Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

144.    That throughout the aforesaid period, but notably from and after June 7, 2013, the Plaintiff filed reports and claims setting forth the aforesaid discriminatory practices and acts of harassment with supervisory employees of the Defendant.

145.    That the filing of the said reports and claims constituted "protected activities" pursuant Title VII.

146.    That the Defendants, knowing of Plaintiff's participation in the said protected activities, retaliated against the Plaintiff by taking adverse employment action against her from and after June 7, 2013.

147.    That the said adverse employment action was taken as a direct causal result of Plaintiff's participation in the aforesaid protected activity and as a direct causal result of Plaintiff's complaints of discrimination and harassment.

148.    That the said retaliatory actions by the Defendants were in violation of Title VII.

149.    That said policies and/or practices cannot be justified as a business necessity.

150.    That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or

discharged from employment; has had her good name and reputation impaired by publication

of the aforesaid discriminatory words and conduct; has had her liberty interest impaired and

her professional reputation and competence impugned in such a fashion to effectively put a

significant roadblock in her continued ability to practice her profession or trade; and

sustained other damages.

151.   That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in

the amount of $5,000,000.00, as and for compensatory damages.

**AS AND FOR A FOURTH CAUSE Of ACTION<br>
FOR RETALIATION IN VIOLATION OF<br>
SECTION 296 OF THE EXECUTIVE LAW<br>
OF THE STATE OF NEW YORK<br>
(NEW YORK STATE HUMAN RIGHTS LAW)**

152.   Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set

forth herein fully at length once again.

153.   That throughout the aforesaid period, but notably from and after June 23, 2013, the Plaintiff

filed reports and claims setting forth the aforesaid discriminatory practices and acts of

harassment with supervisory employees of the Defendant.

154.   That the filing of the said reports and claims constituted "protected activities" pursuant to the

New York State Human Rights Law.

155.   That the Defendants, knowing of Plaintiff's participation in the said protected activities,

retaliated against the Plaintiff by taking adverse employment action against her from and

after June 23, 2013.

156.   That the said adverse employment action was taken as a direct causal result of Plaintiff's

participation in the aforesaid protected activity and as a direct causal result of Plaintiff's

complaints of discrimination and harassment.

157.    That the said retaliatory actions by the Defendants were in violation of the New York State Human Rights Law.

158.    That said policies and/or practices cannot be justified as a business necessity.

159.    That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired by publication of the aforesaid discriminatory words and conduct; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

160.    That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

### AS AND FOR A FIFTH CAUSE Of ACTION
### FOR RETALIATION IN VIOLATION OF
### SECTION 8-107 OF THE
### NEW YORK CITY ADMINISTRATIVE CODE
### (NEW YORK CITY HUMAN RIGHTS LAW)

161.    Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

162.     That throughout the aforesaid period, but notably from and after June 23, 2013, the Plaintiff filed reports and claims setting forth the aforesaid discriminatory practices and acts of harassment with supervisory employees of the Defendant.

163.     That the filing of the said reports and claims constituted "protected activities" pursuant to the New York City Human Rights Law.

164.     That the Defendants, knowing of Plaintiff's participation in the said protected activities, retaliated against the Plaintiff by taking adverse employment action against her from and after June 23, 2013.

165.     That the said adverse employment action was taken as a direct causal result of Plaintiff's participation in the aforesaid protected activity and as a direct causal result of Plaintiff's complaints of discrimination and harassment.

166.     That the said retaliatory actions by the Defendants were in violation of the New York City Human Rights Law.

167.     That said policies and/or practices cannot be justified as a business necessity.

168.     That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired by publication of the aforesaid discriminatory words and conduct; has had her liberty interest impaired and

her professional reputation and competence impugned in such a fashion to effectively put a
significant roadblock in her continued ability to practice her profession or trade; and
sustained other damages.

169.   That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in
the amount of $5,000,000.00, as and for compensatory damages.

**AS AND FOR A SIXTH CAUSE OF ACTION
FOR HOSTILE WORK ENVIRONMENT
IN VIOLATION OF TITLE VII**

170.   Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set
forth herein fully at length once again.

171.   That the aforesaid acts against Plaintiff based on Plaintiff's race and sex by the Defendant,
its supervisors, managers, officers, employees and/or agents that have occurred from and
after June 7, 2013 has constituted an actionable harm to Plaintiff.

172.   That the aforesaid acts against Plaintiff based on the Plaintiff's race and sex by the
Defendant, its supervisors, managers, officers, employees and/or agents that have occurred
from and after June 7, 2013 constitute a Hostile Work Environment in violation of Title VII.

173.   This Hostile Work Environment has constituted a continuous violation of Title VII.

174.   That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering,
physical injury, great mental distress, mental anguish, shock, fright and humiliation; was
rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily
pain and mental anguish for some time to come; has been and will be required to seek and
obtain medical care and treatment; has been unable to attend to usual vocation and duties;
has incurred lost earnings; has lost and/or been actually or constructively terminated and/or

discharged from employment; has had her good name and reputation impaired by publication

of the aforesaid discriminatory words and conduct; has had her liberty interest impaired and

her professional reputation and competence impugned in such a fashion to effectively put a

significant roadblock in her continued ability to practice her profession or trade; and

sustained other damages.

175.   That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in

the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR A SEVENTH CAUSE OF ACTION
## FOR HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF SECTION 296 OF THE EXECUTIVE LAW
## OF THE STATE OF NEW YORK
## (NEW YORK STATE HUMAN RIGHTS LAW)

176.   Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set

forth herein fully at length once again.

177.   That the aforesaid acts against Plaintiff based on Plaintiff's race and sex by the Defendant,

its supervisors, managers, officers, employees and/or agents that have occurred from and

after June 23, 2013 has constituted an actionable harm to Plaintiff.

178.   That the aforesaid acts against Plaintiff based on the Plaintiff's race and sex by the

Defendant, its supervisors, managers, officers, employees and/or agents that have occurred

from and after June 23, 2013 constitute a Hostile Work Environment in violation of section

296 of the Executive Law of the State of New York (otherwise known as the "New York

State Human Rights Law").

179.   This Hostile Work Environment has constituted a harm to Plaintiff.

180.   This Hostile Work Environment has constituted a violation of the New York State Human

Rights Law.

181.   That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired by publication of the aforesaid discriminatory words and conduct; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

182.   That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

### AS AND FOR AN EIGHTH CAUSE OF ACTION
### FOR HOSTILE WORK ENVIRONMENT
### IN VIOLATION OF SECTION 8-107 OF THE
### NEW YORK CITY ADMINISTRATIVE CODE
### (NEW YORK CITY HUMAN RIGHTS LAW)

183.   Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

184.   That the aforesaid acts against Plaintiff based on the Plaintiff's race and sex by the Defendant, its supervisors, managers, officers, employees and/or agents that have occurred from and after June 23, 2013 has constituted an actionable harm to Plaintiff.

185.   That the aforesaid acts against Plaintiff based on the Plaintiff's race and sex by the Defendant, its supervisors, managers, officers, employees and/or agents that have occurred from and after June 23, 2013 constitute a Hostile Work Environment in violation of Section 8-107 of the New York City Administrative Code (otherwise known as the "New York City Human Rights Law").

186.   This Hostile Work Environment has constituted a continuous violation and continuous harm to Plaintiff.

187.   This Hostile Work Environment has constituted a continuous violation of the New York City Human Rights Law.

188.   That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired by publication of the aforesaid discriminatory words and conduct; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

189.   That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR A NINTH CAUSE OF ACTION
## FOR CONTINUING RACE DISCRIMINATION IN
## VIOLATION OF SECTION 8-107 OF THE
## NEW YORK CITY ADMINISTRATIVE CODE
## (NEW YORK CITY HUMAN RIGHTS LAW)

190.   Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set

forth herein fully at length once again.

191.   That the Defendant ConEd repeatedly made references to black female workers "going to the

fields" which statements have been made since as early as 1993 and continuing through the

present.

192.   That such references have were facially discriminatory.

193.   That said discriminatory practices which occurred since as early as 1993 adversely affected

Plaintiff's status as an employee, because of Plaintiff's race.

194.   That the aforesaid statements by the Defendant, its supervisors, managers, officers,

employees and/or agents has constituted an actionable harm to Plaintiff under the continuing

violation doctrine.

195.   That the aforesaid statements by the Defendant, its supervisors, managers, officers,

employees and/or agents that have occurred since as early as 1993 constitute a continuing

violation of Section 8-107 of the New York City Administrative Code (otherwise known as

the "New York City Human Rights Law").

196.   That said violation of the New York City Human Rights Law has caused the Plaintiff to

suffer sustained conscious pain and suffering, physical injury, great mental distress, mental

anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and

still suffers and will continue to suffer bodily pain and mental anguish for some time to

come; has been and will be required to seek and obtain medical care and treatment; has been

unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been

actually or constructively terminated and/or discharged from employment; has had her good

name and reputation impaired by publication of the aforesaid discriminatory words and

conduct; has had her liberty interest impaired and her professional reputation and competence

impugned in such a fashion to effectively put a significant roadblock in her continued ability

to practice her profession or trade; and sustained other damages.

197.   That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in

the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR A TENTH CAUSE OF ACTION
## FOR CONTINUING SEX DISCRIMINATION IN
## VIOLATION OF SECTION 8-107 OF THE
## NEW YORK CITY ADMINISTRATIVE CODE
## (NEW YORK CITY HUMAN RIGHTS LAW)

198.   Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set

forth herein fully at length once again.

199.   That the Defendant ConEd repeatedly made references to black female workers "going to the

fields" which statements have been made since as early as 1993 and continuing through the

present.

200.   That such references have were facially discriminatory.

201.   That said discriminatory practices which occurred since as early as 1993 adversely affected

Plaintiff's status as an employee, because of Plaintiff's sex.

202.   That the aforesaid statements by the Defendant, its supervisors, managers, officers,

employees and/or agents has constituted an actionable harm to Plaintiff under the continuing

violation doctrine.

203.   That the aforesaid statements by the Defendant, its supervisors, managers, officers, employees and/or agents that have occurred since as early as 1993 constitute a continuing violation of Section 8-107 of the New York City Administrative Code (otherwise known as the "New York City Human Rights Law").

204.   That said violation of the New York City Human Rights Law has caused the Plaintiff to suffer sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired by publication of the aforesaid discriminatory words and conduct; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

205.   That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
## FOR CONTINUING HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF TITLE VII

206.   Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

207. That the Defendant ConEd repeatedly made references to black female workers "going to the fields" which statements have been made since as early as 1993 and continuing through the present.

208. That the aforesaid statements Plaintiff have constituted an actionable harm to Plaintiff.

209. That the aforesaid statements by the Defendant, its supervisors, managers, officers, employees and/or agents that have occurred from as early as 1993 constitute a Hostile Work Environment under the continuing violation doctrine in violation of Title VII.

210. This Hostile Work Environment has constituted a continuous violation of Title VII since 1993.

211. That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired by publication of the aforesaid discriminatory words and conduct; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

212. That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

AS AND FOR A TWELFTH CAUSE OF ACTION
FOR CONTINUING HOSTILE WORK ENVIRONMENT
IN VIOLATION OF SECTION 296 OF THE EXECUTIVE LAW
OF THE STATE OF NEW YORK
(NEW YORK STATE HUMAN RIGHTS LAW)

213.    Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set
forth herein fully at length once again.

214.    That the Defendant ConEd repeatedly made references to black female workers "going to the
fields" which statements have been made since as early as 1993 and continuing through the
present.

215.    That the aforesaid statements Plaintiff have constituted an actionable harm to Plaintiff.

216.    That the aforesaid statements by the Defendant, its supervisors, managers, officers,
employees and/or agents that have occurred from as early as 1993 constitute a Hostile Work
Environment under the continuing violation doctrine in violation of the New York State
Human Rights Law.

217.    This Hostile Work Environment has constituted a continuous violation of the New York
State Human Rights Law since 1993.

218.    That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering,
physical injury, great mental distress, mental anguish, shock, fright and humiliation; was
rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily
pain and mental anguish for some time to come; has been and will be required to seek and
obtain medical care and treatment; has been unable to attend to usual vocation and duties;
has incurred lost earnings; has lost and/or been actually or constructively terminated and/or
discharged from employment; has had her good name and reputation impaired by publication

of the aforesaid discriminatory words and conduct; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

219.    That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

### AS AND FOR A THIRTEENTH CAUSE OF ACTION FOR CONTINUING HOSTILE WORK ENVIRONMENT IN VIOLATION OF SECTION 8-107 OF THE NEW YORK CITY ADMINISTRATIVE CODE (NEW YORK CITY HUMAN RIGHTS LAW)

220.    Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

221.    That the Defendant ConEd repeatedly made references to black female workers "going to the fields" which statements have been made since as early as 1993 and continuing through the present.

222.    That the aforesaid statements Plaintiff have constituted an actionable harm to Plaintiff.

223.    That the aforesaid statements by the Defendant, its supervisors, managers, officers, employees and/or agents that have occurred from as early as 1993 constitute a Hostile Work Environment under the continuing violation doctrine in violation of the New York City Human Rights Law.

224.    This Hostile Work Environment has constituted a continuous violation of the New York City Human Rights Law since 1993.

225.    That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering,

physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired by publication of the aforesaid discriminatory words and conduct; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

226.   That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR A FOURTEENTH CAUSE OF ACTION
### FOR RETALIATION
### IN VIOLATION OF TITLE VII

227.   Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

228.   That the Defendant ConEd repeatedly denied Plaintiff's requests for transfers to the Bronx/Westchester Station.

229.   That such denials amounted to retaliation against Plaintiff for her complaints to management and to the EEO.

230.   That the retaliation by Defendant in denying Plaintiff's transfer requests have constituted an actionable harm to Plaintiff.

231.   That said retaliation is a continuous violation of Title VII.

232.   That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired by publication of the aforesaid discriminatory words and conduct; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

233.   That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION
## FOR RETALIATION
## IN VIOLATION OF SECTION 296 OF THE EXECUTIVE LAW
## OF THE STATE OF NEW YORK
## (NEW YORK STATE HUMAN RIGHTS LAW)

234.   Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

235.   That the Defendant ConEd repeatedly denied Plaintiff's requests for transfers to the Bronx/Westchester Station.

236.   That such denials amounted to retaliation against Plaintiff for her complaints to management

and to the EEO.

237. That the retaliation by Defendant in denying Plaintiff's transfer requests have constituted an actionable harm to Plaintiff.

238. That said retaliation is a continuous violation of the New York State Human Rights Law.

239. That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired by publication of the aforesaid discriminatory words and conduct; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

240. That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

### AS AND FOR A SIXTEENTH CAUSE OF ACTION
### FOR RETALIATION
### IN VIOLATION OF SECTION 8-107 OF
### THE NEW YORK CITY ADMINISTRATIVE CODE
### (NEW YORK CITY HUMAN RIGHTS LAW)

241. Plaintiff repeats, reiterates and realleges each and every allegation previously stated as if set forth herein fully at length once again.

242.   That the Defendant ConEd repeatedly denied Plaintiff's requests for transfers to the Bronx/Westchester Station.

243.   That such denials amounted to retaliation against Plaintiff for her complaints to management and to the EEO.

244.   That the retaliation by Defendant in denying Plaintiff's transfer requests have constituted an actionable harm to Plaintiff.

245.   That said retaliation is a continuous violation of the New York City Human Rights Law.

246.   That as a result of the foregoing, the Plaintiff sustained conscious pain and suffering, physical injury, great mental distress, mental anguish, shock, fright and humiliation; was rendered sick, sore and disabled; suffered and still suffers and will continue to suffer bodily pain and mental anguish for some time to come; has been and will be required to seek and obtain medical care and treatment; has been unable to attend to usual vocation and duties; has incurred lost earnings; has lost and/or been actually or constructively terminated and/or discharged from employment; has had her good name and reputation impaired by publication of the aforesaid discriminatory words and conduct; has had her liberty interest impaired and her professional reputation and competence impugned in such a fashion to effectively put a significant roadblock in her continued ability to practice her profession or trade; and sustained other damages.

247.   That by reason of the foregoing, said Plaintiff demands judgment against the Defendant in the amount of $5,000,000.00, as and for compensatory damages.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff requests an Order to issue from the Court granting judgment against the Defendant:

a.    on the first cause of action in the sum of $5,000,000.00;

b.    on the second cause of action in the sum of $5,000,000.00;

c.    on the third cause of action in the sum of $5,000,000.00;

d.    on the fourth cause of action in the sum of $5,000,000.00;

e.    on the fifth cause of action in the sum of $5,000,000.00;

f.    on the sixth cause of action in the sum of $5,000,000.00;

g.    on the seventh cause of action in the sum of $5,000,000.00;

h.    on the eighth cause of action in the sum of $5,000,000.00;

I.    on the ninth cause of action in the sum of $5,000,000.00;

j.    on the tenth cause of action in the sum of $5,000,000.00;

k.    on the eleventh cause of action in the sum of $5,000,000,00;

l.    on the twelfth cause of action in the sum of $5,000,000.00;

m.    on the thirteenth cause of action in the sum of $5,000,000;

n.    on the fourteenth cause of action in the sum of $5,000,000;

o.    on the fifteenth cause of action in the sum of $5,000,000;

p.    on the sixteenth cause of action in the sum of $5,000,000;

q.    punitive damages against the Defendant in the amount of $10,000,000.00;

r.    attorneys fees in an amount to be assessed by the Court; and

r.    any other just and further relief this Court may so determine, together with interest, costs and

disbursements, as well as attorneys fees.

Dated: White Plains, New York
       July 19, 2017

                        Jasne & Florio, L.L.P.
                        *Attorneys for Plaintiff*

                        Hugh G. Jasne, (HGJ-5041)
                        30 Glenn Street - Suite 103
                        White Plains, New York 10603
                        Tel: 914 997-1212 / Fax: 914 682-8692
                        hgj@jasneflorio.com

## REQUEST FOR TRIAL BY JURY

In accord with FRCP 38, Plaintiff hereby requests a trial by jury as to all matters and

issues submitted to the Court in any trial of this action.

                        Hugh G. Jasne, Esq. (HGJ-5041)

## VERIFICATION

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF WESTCHESTER      )

SHERRY GRIMES-JENKINS, being duly sworn, deposes and states under penalty of

perjury as follows:

I am the PLAINTIFF in the within action, and I have read the foregoing SECOND

AMENDED VERIFIED COMPLAINT, and know the contents thereof, and the same is true to my

own knowledge, except as to those matters therein stated to be alleged upon information and belief,

and that as to those matters, I believe them to be true.

Sherry Grimes-Jenkins

Sworn to before me this
19th day of July, 2017

Notary Public

HUGH G. JASNE
Notary Public, State of New York
No. 02JA4962433
Qualified in Westchester County
Commission Expires February 20, 2018