UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHERRY GRIMES-JENKINS,

                              Plaintiff,

              -against-

CONSOLIDATED EDISON COMPANY OF NEW
YORK, INC.,

                              Defendant.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/31/2021__

16 Civ. 4897 (AT)

**ORDER**

ANALISA TORRES, District Judge:

        Plaintiff, Sherry Grimes-Jenkins, brings this action against her former employer,

Defendant, Consolidated Edison Company of New York, Inc. ("ConEd"), alleging that she was

discriminated against on the basis of her race and gender in violation of the New York City

Human Rights Law, N.Y.C. Admin. Code § 8-107 (the "NYCHRL"), subjected to a hostile work

environment on the basis of her race and gender in violation of Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y.

Exec. Law § 296 (the "NYSHRL"), and the NYCHRL, and unlawfully retaliated against for

exercising her rights under all three statutes, *see* SAC, ECF No. 46.   Defendant moves for

summary judgment pursuant to Federal Rule of Civil Procedure 56.  ECF No. 105.  For the

reasons stated below, Defendant's motion is DENIED.

## BACKGROUND

        The facts discussed in this opinion are undisputed except where otherwise noted.  The

Court has drawn all reasonable inferences in favor of Plaintiff as the nonmovant.  *See Costello v.

City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).[1]

---

[1]  The following facts are drawn from the parties' pleadings and submissions, including the second amended
complaint, the Rule 56.1 statement of undisputed facts, and Plaintiff's response.  Disputed facts are so noted.
Citations to a paragraph in the Rule 56.1 statement also includes Plaintiff's response.

Plaintiff, Sherry Grimes-Jenkins, a Black woman, was employed by Defendant, ConEd, from 1990 to 2017.  56.1 Stmt. ¶¶ 5, 15, ECF No. 96.  Over the years, she was promoted to various union positions.  *Id*. ¶¶ 15–17.  In 2008, she was demoted, for reasons disputed by the parties, to the title of Associate Specialist to Mechanic A, an office job, rather than field-based work.  *Id*. ¶¶ 18, 23.  Between 2008 and 2012, Plaintiff reported to Darlene Wells.  *Id*. ¶ 21.  Between 2012 and 2017, Plaintiff reported to Thomas Nolan, and Eric Galloza served as her second-level manager.  *Id*. ¶ 22.

The parties dispute many of the events which give rise to this litigation.  Throughout her tenure at ConEd, Plaintiff alleges that she experienced race and gender harassment and discrimination.  She testified that in 1990 she was sexually assaulted by a group of male coworkers.  Pl. Dep. at 297:8–15, ECF Nos. 124-7–124-32.  After she reported the incident, she believed she gained a reputation among her coworkers and superiors for "turning people in" and filing complaints.  *Id*. at 298:5–299:23.

On July 25, 2013, Tybrey Barnes, a supervisor who did not supervise Plaintiff, informed management that other employees told him that they saw Plaintiff mocking his speech impediment.  56.1 Stmt. ¶¶ 24–26.  Plaintiff denied the accusation.  *Id*.  The following day a conflict resolution meeting was conducted, but the matter was not reported to ConEd's Equal Employment Opportunity Affairs Department (the "EEOA")[2] for further investigation.  *Id*. ¶¶ 27, 29.  In September 2013, when she was working at the 42nd Street substation, Plaintiff told Barnes that there were insects and rat droppings at her workstation.  *Id*. ¶ 30.  Eventually, Plaintiff called a "timeout"—a safety mechanism, which ceases all work at a particular worksite so that employees can address the safety concern.  *Id*. ¶¶ 32–33.  The parties dispute the reasons

---

[2] Jennifer Flynn, a Specialist/Investigator for the EEOA, avers that the EEOA later became the Office of Diversity and Inclusion ("ODI").  ECF No. 112 ¶ 1.

underlying her decision to call a timeout.  *Id*. ¶ 32.  A few days later, Plaintiff was transferred to the Astor Place substation while her old workstation was cleaned; however, even after the cleaning, Plaintiff remained assigned to that location for years.  *Id*. ¶ 34; Pl. Dep. at 251:19–253:7, 303:9–13.  Plaintiff testified that she was the only one sitting in another department, and that Galloza told her "I don't want you speaking to . . . a fucking person up there[.] I want you to keep your mouth shut."  Pl. Dep. at 303:3–10.

After the timeout incident, two managers conducted a fact-finding interview with Barnes. 56.1 Stmt. ¶ 35.  In September 2013, Nolan, Galloza, a labor relations manager, and a union representative interviewed Plaintiff, *id*. ¶ 36, who stated that Barnes and another coworker, Devri Gibbs, made offensive comments about her, *id*. ¶ 37.  For example, she said that in 2012, Gibbs said to Barnes, "you want to fuck that don't you" or "you want that don't you," and Barnes responded, "not everyone is into that."  *Id*.  In 2013, while Plaintiff was getting dressed for a co-worker's retirement party, Gibbs made additional comments including "bring that ass out here," while Barnes laughed.  *Id*.  The parties dispute whether this was the first time that Plaintiff complained about these incidents.  After these interviews, the EEOA opened up an investigation about the issues raised by Barnes and Plaintiff.  *Id*. ¶ 41.

In October 2013, Plaintiff reported to the EEOA that she was being retaliated against because of her complaints.  Plaintiff believed she was being singled out by a dress code policy which banned sneakers, sandals, open toed shoes, and dresses.  *Id*. ¶ 43.

In November 2013, the EEOA concluded its investigation into Barnes's complaints about Plaintiff mocking him, and determined that they were substantiated.  *Id*. ¶ 45.  However, the EEOA concluded that Plaintiff's complaints about Barnes and Gibbs, and her retaliation claims, were unsubstantiated.  *Id*. ¶¶ 48–49.  In January 2014, Nolan issued a final warning and a five-day unpaid suspension against Plaintiff.  *Id*. ¶ 50.  In response, she filed a union grievance, and

3

the parties later reached a settlement.  *Id*. ¶¶ 52–53.  ConEd reduced her punishment to a written warning and a four-day unpaid suspension.  *Id*. ¶ 53.  Plaintiff testified that the union business agent encouraged her to accept the settlement because after receiving a final warning, she could lose her job for any number of reasons.  Pl. Dep. at 198:22–199:21.

In 2015, Plaintiff complained to management and a shop steward concerning incidents with other coworkers, including David Robinson, Robin Yang, Barnes, and Louise Baker.  56.1 Stmt. ¶ 54.  She reported, among other things, that Robinson made comments to Yang about "weed," "Bob Marley," and "Buffalo Solider," which Plaintiff believes were references to her "West Indian heritage."  *Id*. ¶¶ 57–59.  After an investigation, the Employee & Labor Relations Department concluded that her allegations were unsubstantiated.  *Id*. ¶ 60.  In 2015, Plaintiff raised another complaint against Barnes and Baker regarding prank phone calls, but this was also found to be unsubstantiated.  *Id*. ¶¶ 61–63.

In 2016, Plaintiff complained to management about Yang and Stella Polanco.  *Id*. ¶ 66. Plaintiff stated that they would follow her into the restroom and leave the door open while she was using the bathroom.  *Id*.  After she asked them to stop doing that, Yang "charged at her" and kicked nearby lockers.  *Id*.  Plaintiff testified that when a woman was using the restroom, it was common for men to walk by and make comments about how the woman "smelled."  Pl. Dep. at 208:8–14.  During the course of an investigation, Yang, Polanco, and Baker denied Plaintiff's allegations, and an individual in ConEd's Human Resources department told Plaintiff that there was no "proof" of her claims.  *Id*. at 213:13–24; 56.1 Stmt. ¶ 68.

Throughout her employment at ConEd, Plaintiff made several transfer requests.  56.1 Stmt. ¶¶ 71–72.  To transfer within ConEd, union employees must receive union approval.  *Id*. ¶ 70.  In 2013, one of her transfer requests was denied.  *Id*. ¶¶ 71–72.  The parties dispute whether she identified an employee to swap jobs with pursuant to the union's procedures.  *Id*.

¶ 72.  Plaintiff testified that in 2014 she spoke to Jon Mak, a Senior Human Resources Specialist, about a hardship transfer.  Pl. Dep. at 267:3–268:7.  She says that Mak threatened her and told her that he would transfer her to Staten Island.  *Id*. at 269:4–7.  And, in 2017, when Thomas Karakatsanis, a general manager, informed Plaintiff that she was being transferred to a field position, she requested a transfer.  56.1 Stmt. ¶¶ 102, 105.

Throughout her tenure at ConEd, Plaintiff alleges that the term "into the fields" was directed at her and other Black employees.  *Id*. ¶ 82.  She testified that she overheard Galloza say that a Black employee should go "back into the fields."  *Id*. ¶ 83.  During a meeting about her 2013 transfer request, Galloza told her "if you don't come up here and keep your mouth shut, I'm going to throw you back into the fields."  *Id*. ¶ 84.  On another occasion Galloza told her that, "if you keep complaining, I'm going to throw you back into the fields."  *Id*. ¶ 85.  Similar comments were made by another coworker, Thomas McEnery, who served as a union representative.  *Id*. ¶ 86.  Plaintiff testified that Galloza did not use this phrase with white employees.  *Id*. ¶ 88.

## DISCUSSION

### I.   Legal Standard

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986).  A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

"The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party."  *Connecticut Ironworkers Employers Ass'n, Inc. v. New*

*England Reg'l Council of Carpenters*, 869 F.3d 92, 98–99 (2d Cir. 2017); *see also* Fed. R. Civ.

P. 56(c)(1).  If the nonmoving party has the ultimate burden of proof on specific issues at trial,

the movant may also satisfy its own summary judgment burden by demonstrating that the

adverse party cannot produce admissible evidence to support an issue of fact.  *Celotex*, 477 U.S.

at 322–23; *PepsiCo, Inc. v. Coca-Cola Co*., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).  If

the moving party meets its initial burden, the burden then shifts to the opposing party to establish

a genuine dispute of material fact.  *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo*, 315 F.3d

at 105.  Where the party opposing summary judgment "fails to properly address [the moving]

party's assertion of fact . . . , the court may . . . consider the fact undisputed for purposes of the

motion."  Fed. R. Civ. P. 56(e)(2).

## II.   Local Civil Rule 56.1

Local Civil Rule 56.1 governs factual statements on motions for summary judgment.  It

requires a party moving for summary judgment to submit "a separate, short and concise

statement" setting forth material facts as to which there is no genuine issue to be tried.  Local

Civ. R. 56.1(a).  A party opposing summary judgment must respond with a statement of facts as

to which a triable issue remains.  Local Civ. R. 56.1(b).  "Each numbered paragraph in the

statement of material facts . . . will be deemed to be admitted . . . unless specifically controverted

by a correspondingly numbered paragraph in the statement required to be served by the opposing

party."  Local Civ. R. 56.1(c).  Further, "[e]ach statement by the movant or opponent . . .

including each statement controverting any statement of material fact, must be followed by

citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."

Local Civ. R. 56.1(d).  Defendant argues that some of Plaintiff's responses fail to cite to

evidence in the record.  Def. Mem. at 10–11, ECF No. 114.  However, even if true, "[a] district

court has broad discretion to determine whether to overlook a party's failure to comply with

local court rules" and may "opt to conduct an assiduous review of the record." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) (citations and internal quotation marks omitted). The Court will do so here. However, when "objections are unsupported by the record, they are conclusory and cannot create a genuine dispute of material fact." *Mortimer v. Wilson*, No. 15 Civ. 7186, 2020 WL 3791892, at *6 (S.D.N.Y. July 7, 2020). Accordingly, the Court will rely only on those statements that are free from these defects. *See id.*

III.  Plaintiff's Affidavit

Next, Defendant asks the Court to disregard Plaintiff's affidavit filed with her opposition papers. Def. Reply at 1–5, ECF No. 128; ECF No. 125. Defendant contends that the affidavit is self-serving, conclusory, and contradictory. Def. Reply at 1–4. The Court declines to disregard Plaintiff's affidavit. "In discrimination cases, the only direct evidence available very often centers on what the defendant allegedly said or did." *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 57 (2d Cir. 1998). Plaintiff's affidavit recounts many of the events giving rise to her lawsuit, and generally includes citations to the record. *See generally* ECF No. 125. And, "there is nothing in the rule to suggest that [a] nonmovants' affidavit . . . cannot—as a matter of law— suffice to defend against summary judgment." *Danzer*, 151 F.3d at 57; Fed. R. Civ. P. 56(c). Of course, the Court will not consider statements in the affidavit that it deems conclusory or not based on Plaintiff's personal knowledge, because that would be insufficient to defend against a motion for summary judgment. *Danzer*, 151 F.3d at 57 n.5.

IV.  Hostile Work Environment Under Title VII and the NYSHRL

Plaintiff brings claims under Title VII and the NYSHRL alleging that Defendant subjected her to a hostile work environment because of her race and gender. A plaintiff can establish a prima facie hostile work environment claim under Title VII and the NYSHRL if she can show that: "the workplace is permeated with discriminatory intimidation, ridicule, and insult,

that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and that such mistreatment occurs "because of an employee's protected characteristic." *Rivera v. Rochester Genesse Reg'l Transp. Auth*., 743 F.3d 11, 20 (2d Cir. 2014) (internal quotation marks, alterations, and citation omitted). However, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Also, "if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Id.* at 21–22. Thus, the environment must be reasonably perceived, and actually perceived, as hostile or abusive. *Id.* at 22. Additionally, it is "axiomatic that mistreatment at work, whether through subjection to a hostile environment or through [other means], is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic," such as race or gender. *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (citation omitted). As such, personal animus without evidence of race or gender bias is insufficient to establish a claim under Title VII. *See Lennert–Gonzalez v. Delta Airlines, Inc.*, No. 11 Civ. 1459, 2013 WL 754710, at *8 (S.D.N.Y. Feb. 28, 2013).

Courts must also find a "basis for imputing the conduct creating a hostile work environment to the employer." *Summa v. Hofstra Univ.*, 708 F.3d 115, 123–24 (2d Cir. 2013). There can be no imputed liability unless (1) the complained-of conduct was done by a supervisor, or (2) "the employer failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Das v. Consol. Sch. Dist. of New Britain*, 369 F. App'x

186, 190 (2d Cir. 2010) (internal quotation marks and citation omitted).  The NYSHRL applies the same standard.  *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011).

Defendant has failed to establish that there are no triable issues of fact regarding whether Plaintiff was subjected to a hostile work environment under Title VII and the NYSHRL because of her race or gender.

### A. Race-Based Hostile Work Environment

A reasonable jury crediting Plaintiff's claims concerning the use of the phrase "into the fields" could find that Plaintiff's work environment was objectively hostile based on her race. Plaintiff testified that Galloza and McEnery referred to white employees as "going to the field" or "on the job," but referred to Black employees as "going to the fields" or being "thrown back into the fields."  Pl. Dep. at 234:16–235:24.  She contends that the use of the plural word, "fields" as opposed to "field" has a clear racial connotation that harks back to slavery.  SAC ¶ 28.  Plaintiff testified that on several occasions Galloza told Plaintiff that if she kept requesting transfers, he was going to "throw [her] back into the fields."  Pl. Dep. at 233:14–19.  On other occasions, Galloza similarly told her that if she made another complaint, they were "going to throw [her] back into the fields."  *Id.* at 278:12–20.  She also heard Galloza tell another Black employee that Galloza would be "throwing him back into the fields."  *Id.* at 241:6–23.  On a different occasion, McEnery told her that she "need[ed] to . . . come out into the fields and do the work like field people have to do and work in the good fields like back in the day."  *Id.* at 233:25–234:7.  The Court rejects Defendant's contention that this episodic conduct fails to establish a hostile work environment.  Def. Mem. at 13–14.  Plaintiff posits that these words were directed at Black employees during her 27 years of employment at ConEd.  56.1 Stmt. ¶ 82. Thus, the manner in which the phrase was used raises a triable issue of fact about whether it was

objectively "intimidating, humiliating, or insulting," such that it created a hostile work environment because of Plaintiff's race. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

Furthermore, the Court finds that Plaintiff has adduced evidence that she subjectively perceived the environment to be abusive. She testified that the phrase was directed against her in a threatening manner, and that she complained about its racial undertones. Pl. Dep. at 246:16–20. Thus, the subjective element of the hostile work environment claim is also satisfied. *Harris*, 510 U.S. at 22.

Next, Plaintiff must "demonstrate that the harassing conduct 'which created the hostile situation should be imputed to the employer.'" *Distasio v. Parkmer Elmer Corp.*, 157 F.3d 55, 63 (2d Cir. 1998) (citation omitted). If the harasser is the plaintiff's supervisor, "the employer is presumed to be absolutely liable." *Id*. Here, some of the harassment is attributable to Galloza, Plaintiff's manager. Pl. Dep. at 85:12–18. Thus, there is a reasonable basis for imputing the conduct to Defendant.

Accordingly, Defendant is not entitled to summary judgment on Plaintiff's race-based hostile work environment claim under Title VII and the NYSHRL.

### B. Gender-Based Hostile Work Environment

Similarly, Defendant has failed to show that there is no dispute of material fact as to whether Plaintiff was subjected to a hostile work environment because of her gender. A plaintiff may establish the "severe or pervasive" element by identifying either "a single incident [that] was extraordinarily severe, or . . . a series of incidents [that] were sufficiently continuous and concerted to have altered the conditions of her working environment." *Desardouin v. City of Rochester*, 708 F.3d 102, 105 (2d Cir. 2013) (citation omitted). Although isolated incidents generally do not support a claim of discriminatory harassment, unless the incident is extremely serious, courts must be careful "not to view individual incidents in isolation," but rather "[i]n

assessing the evidence" the Court's task is "to determine whether a rational juror could infer that a reasonable employee would have found the abuse so pervasive or severe as to alter her working conditions." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012).

A reasonable factfinder could conclude that Plaintiff's work environment was objectively hostile because of her gender. Plaintiff contends, among other things, that: (1) in June or July 2013, Gibbs made comments such as, "look at [Plaintiff's] ass, look how it sways from side to side," while other people laughed at her, Pl. Dep. at 125:19–126:16; (2) in July 2013, Gibbs said that Plaintiff's "big ass just stopped her from hitting the ground" after she fell off her chair, *id.* at 157:21–158:2; (3) in April 2016, Yang and Polanco followed Plaintiff into the women's restroom and left the door open, 56.1 Stmt. ¶ 66; (4) in April 2016, Yang "charged at" Plaintiff after Plaintiff asked Yang to stop leaving the women's bathroom door open, *id.*; (5) in 2014, Eric Vormittag, Plaintiff's former supervisor, told her that she did not want a new position because she has "young kids and cannot help [her] family," ECF No. 122 ¶ 50; (6) at an unidentified time, McEnery, Nolan, Galloza, and another employee told Plaintiff that they rated male mechanics higher than female mechanics and that males were "top barrel mechanics" and that women were "at the bottom of the barrel," *id.* ¶ 63; and (7) at an unidentified time, McEnery told other employees that Plaintiff "keeps getting pregnant so that she can get time off the job," SAC ¶ 100.

Defendant contends that Plaintiff has failed to establish any evidence that some of the alleged incidents were motivated by gender, including the conduct of Gibbs, Polanco, and Vormittag. Def. Mem. at 15–16. The Court disagrees. What was said by Gibbs, and the actions of Yang and Polanco, "need not be motivated by sexual desire to support an inference of discrimination." *Raniola v. Bratton*, 243 F.3d 610 (2d Cir. 2001). Plaintiff testified that Gibbs frequently made comments about her body in the presence of others. Pl. Dep. at 126:10–16,

157:13–158:6.  Similarly, she alleges that when Yang, Barker, and Polanco left the bathroom door open, men would walk by and describe how the woman using the restroom "smelled."  *Id.* at 207:24–210:16.  Plaintiff said that Yang did this every time she entered the bathroom, but would not do this to other women.  *Id.*

Defendant points to the fact that Plaintiff has conceded that the conduct of Gibbs, Yang, and Polanco was born of their allegiance to Wells, Plaintiff's former boss, who was transferred after Plaintiff accused Wells of sexual harassment.  Def. Mem. at 15–16.  But the intentions and motivations of Gibbs, Yang, and Polanco remain in dispute.[3]  And, "the question of whether considerations of the plaintiff's sex caused the conduct at issue often requires an assessment of individuals' motivations and state of mind. . . . [W]hen . . . fact questions such as state of mind or intent are at issue, summary judgment should be used sparingly."  *Redd*, 678 F.3d at 178 (quotation marks, alterations, and citations omitted).  Similarly, although Defendant argues that Vormittag's comment is gender neutral, "[f]acially neutral incidents may be included . . . among the totality of the circumstances that courts consider in any hostile work environment claim."  *Alfano*, 294 F.3d at 378 (quotation marks omitted).  Thus, these incidents, taken as a whole, raise a genuine dispute as to whether they were sufficiently "continuous and concerted" to create an objectively hostile environment.  *Desardouin*, 708 F.3d at 105.

Additionally, Plaintiff testified that she complained to management about the conduct of Gibbs, Yang, and Polanco, both formally and informally, and that she felt a lot of hostility.  Pl. Dep. at 213:15–24.  Plaintiff said that she was "so embarrassed" when Gibbs made "a huge scene

---

[3] Plaintiff testified that she had previously filed a sexual harassment complaint against Wells.  Pl. Dep. at 135:3–136:20.  She reported that Wells would touch her leg, brush up against her rear-end, and follow her into the bathroom.  *Id.* at 87:16–21.  Plaintiff testified that she heard from her coworkers that Wells was telling them that she had to leave the station because of Plaintiff.  *Id.* at 137:10–138:6.  The Court notes that Plaintiff's allegations relating to Wells are not actionable because they took place before 2013.  *See* ECF No. 53.  However, Plaintiff testified that Wells was close friends with Gibbs, Yang, and Polanco, Pl. Dep. at 195:2–11, and that Wells told Plaintiff that her friends could "come after" her, *id.* at 135:9–15.

about [her] body." *Id.* at 123:9–15.  A reasonable juror crediting her testimony could find that Plaintiff has satisfied the subjective requirement of a hostile work environment claim.  *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 397 (S.D.N.Y. Sept. 30, 2019).

The Court also finds that Plaintiff has raised a triable issue of fact on the issue of whether the harassing conduct should be imputed to Defendant.  *Distasio*, 157 F.3d at 63.  Plaintiff testified that some of her supervisors, including Nolan and Galloza, participated in the harassing conduct.  Thus, absolute liability would attach with respect to them.  Additionally, Plaintiff has raised a triable issue of fact as to whether Defendant "knew or reasonably should have known about harassment by non-supervisory workers, yet failed to take appropriate remedial action." *Turley v. ISG Lackanna, Inc.*, 774 F.3d 140, 153 (2d Cir. 2014) (internal quotation marks and citation omitted).  Plaintiff stated that she complained to her supervisors about Gibbs's comments and brought them up during an investigation in 2013.  Pl. Dep. at 128:4–12; 56.1 Stmt. ¶ 42.  Plaintiff also complained about Yang and Polanco, but ConEd's Human Resources department told her that she did not have enough "proof" because the comments were "hearsay." Pl. Dep. at 230:13–22.  Thus, the record establishes that there is a genuine dispute of material fact about whether ConEd took appropriate remedial action.  *Turley*, 774 F.3d at 153.

Accordingly, Defendant is not entitled to summary judgment on Plaintiff's gender-based hostile work environment claim under Title VII and the NYSHRL.

C. *Faragher/Ellerth* Defense

Finally, Defendant contends that even if Plaintiff can establish a prima facie case that she was subjected to a hostile work environment based on her race and gender, Defendant can show that the *Faragher/Ellerth* affirmative defense applies.  Def. Mem. at 22.  The Court disagrees because there are triable issues of fact with respect to both elements of the *Faragher/Ellerth* defense.  An employer can raise the *Faragher/Ellerth* defense by demonstrating that (1) it

13

"exercised reasonable care to prevent and correct [] any . . . harassing behavior," and (2) that the plaintiff "unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524 U.S. 775, 806 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998). "An employer may demonstrate the exercise of reasonable care, required by the first element, by showing the existence of an antiharassment policy during the period of the plaintiff's employment, although that fact alone is not always dispositive." *Ferraro v. Kellwood Co*., 440 F.3d 96, 102 (2d Cir. 2006).

Defendant cites ConEd's policies and procedures in place to address discrimination, retaliation, and harassment, Def. Mem. at 18, but fails to point to undisputed facts showing that the proper policies and procedures were followed in this case, *see id*. Plaintiff, however, has raised a triable issue of fact as to whether she reasonably took advantage of any preventative or corrective opportunities provided by ConEd. She testified that she reported Galloza's use of the phrase "into the fields" during the 2014 complaint. Pl. Dep. at 238:20–239:9, 246:16–20. Plaintiff also stated that she complained to the union about McEnery's use of the phrase, and she believes she also reported the incident to the EEOA. *Id*. at 240:4–15. Similarly, she brought several complaints against Gibbs, Yang, and Polanco. Given her history of complaints, the question of whether Plaintiff reasonably took advantage of corrective opportunities must be put to the jury. *Gorzynski v. JetBlue Airways Corp*., 596 F.3d 93, 102 (2d Cir. 2010); *Distasio*, 157 F.3d at 65.

Accordingly, Defendant is not entitled to summary judgment on Plaintiff's hostile work environment claims under Title VII and the NYSHRL based on race and gender, and its motion is DENIED.

14

V.    Discrimination and Hostile Work Environment Under NYCHRL

Defendant has also failed to establish that there are no triable issues of fact as to

Plaintiff's causes of action for race and gender discrimination and a hostile work environment

under the NYCHRL.  Def. Mem. at 19–21.

A. Race and Gender Discrimination

The NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the

extent that such a construction is reasonably possible."  *Albunio v. City of New York*, 947 N.E.2d

135, 137 (N.Y. 2011).  To survive summary judgment,

> [t]he plaintiff need only show that her employer treated her less well, at least in
> part for discriminatory reasons.  The employer may present evidence of its
> legitimate, non-discriminatory motives to show the conduct was not caused by
> discrimination, but it is entitled to summary judgment on this basis only if the
> record establishes as a matter of law that discrimination played no role in its
> actions.

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013)

(quotation marks, alteration, and emphasis omitted).  Thus, to establish a discrimination claim

under the NYCHRL, "the plaintiff need only demonstrate by a preponderance of the evidence

that she has been treated less well than other employees because of her" protected characteristic.

*Id.* at 110.  Even given the more liberal standard, the NYCHRL is not "a general civility code,

and petty slights and trivial inconveniences are not actionable."  *Russo v. N.Y. Presbyterian

Hosp.*, 972 F. Supp. 2d 429, 450 (E.D.N.Y. 2013) (internal quotation marks and citation

omitted).

The record in this case raises a triable issue of fact as to whether Plaintiff was treated less

well because of her race.  Under the NYCHRL, "even a single comment may be actionable in the

proper context."  *Mihalik*, 715 F.3d at 113.  As discussed above, Plaintiff testified that she was

told on various occasions that she would be "thrown back into the fields" after she filed

complaints or requested transfers, and that this phrase was also directed at another Black employee. *See infra* § IV.A; Pl. Dep. at 233:14–19, 234:16–235:24. Plaintiff also stated that this phrase was not used with respect to white employees. Pl. Dep. at 234:16–20. Thus, based on the factual record developed thus far, a reasonable juror could find that Plaintiff was treated less well because of her race and that these comments amounted to more than "petty slights and trivial inconveniences." *Williams v. N.Y.C. Hous. Auth.*, 872 N.Y.S.2d 27, 38–40 (N.Y. App. Div. 2009).

Similarly, the record here raises triable issues of fact as to whether Plaintiff was treated less well because of her gender. Plaintiff need only adduce evidence of "the existence of unwanted gender-based conduct" to survive summary judgment. *Id.* at 38. As discussed above, Plaintiff testified that Gibbs made sexual comments about her body in the presence of others, that Yang and Polanco repeatedly left the bathroom door open while Plaintiff was using the restroom, and that Vormittag made comments about her not wanting a job because of her family and children. *See infra* § IV.B. The comments by Nolan, Galloza, and McEnery could unlawfully "signal views about the role of women in the workplace." *Mihalik*, 715 F.3d at 111 (internal quotations and citations omitted). Moreover, Plaintiff testified that Nolan told her that ConEd enforced a dress code that prohibited dresses, open-toed shoes, and other "girly stuff," which Plaintiff felt specifically targeted her and not male employees. *Id.* at 176:3–18, 181:12–21. Thus, a reasonable jury considering all these facts could find that Plaintiff was treated less well because of her gender. *Williams*, 872 N.Y.S.2d at 39, 40 n.27.

Moreover, there is a genuine dispute of material fact as to whether ConEd should be held vicariously liable under the NYCHRL. Under the NYCHRL, a defendant may assert an affirmative defense where the offending employee "(1) exercised managerial or supervisory responsibility, (2) where the employer knew of the offending employee's unlawful

discriminatory conduct and acquiesced in it or failed to take immediate and appropriate

corrective action, and (3) where the employer should have known of the offending employee's

unlawful discriminatory conduct yet failed to exercise reasonable diligence to prevent it."

*Schaper*, 408 F. Supp. at 396 (alterations omitted).  In light of Plaintiff's complaints about the

harassing conduct, and the fact that ConEd repeatedly deemed Plaintiff's complaints

unsubstantiated, there exists a triable issue of fact about whether ConEd took "immediate and

appropriate corrective action."  *Id.*  "In evaluating both the plaintiff's claims and the defendant's

affirmative defense, courts must consider the 'totality of the circumstances,'" and New York

courts have determined that "a jury is often best suited to make these determinations."  *Mihalik*,

715 F.3d at 111.  Thus, crediting Plaintiff's version of the facts, a reasonable juror could find that

ConEd failed to take appropriate action and is, therefore, vicariously liable.

### B. Hostile Work Environment

"[U]nder the NYCHRL, there are not separate standards for 'discrimination' and

'harassment' claims."  *Johnson v. Strive E. Harlem Emp. Grp.*, 990 F. Supp. 2d 435, 445

(S.D.N.Y. 2014).  Unlike Title VII and the NYSHRL, the NYCHRL imposes liability for

harassing conduct that does not qualify as "severe or pervasive," and "questions of 'severity' and

'pervasiveness' are applicable to consideration of the scope of permissible damages, but not to

the question of underlying liability."  *Williams*, 872 N.Y.S.2d at 38 (citation omitted).  Because

Plaintiff has established a hostile work environment claim under Title VII and the NYSHRL

based on race and gender, she has also done so under the broad and remedial standards of the

NYCHRL.  Local Civil Rights Restoration Act of 2005, N.Y.C., N.Y., Local Law No. 85, § 1

(Oct. 3, 2005) ("[F]ederal and state civil rights laws [are] a floor below which the City's Human

Rights law cannot fall.").

Accordingly, Defendant is not entitled to summary judgment on Plaintiff's claims under the NYCHRL for gender and race discrimination or hostile work environment, and its motion is DENIED.

VI.   Retaliation

Defendant has also failed to establish no triable issue of fact as to Plaintiff's retaliation claims.  Def. Mem. at 19–21.  To establish a prima facie case of retaliation under Title VII and the NYSHRL, a plaintiff must show that: (1) she engaged in a protected activity by opposing a practice made unlawful by Title VII; (2) her employer was aware of that activity; (3) she suffered a materially adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action.  *Cretella v. Liriano*, 633 F. Supp. 2d 54, 74 (S.D.N.Y. 2009), *aff'd*, 370 Fed. App'x 157 (2d Cir. 2010).  The NYCHRL defines the activities protected against retaliation more broadly and "protects plaintiffs who oppose any practice forbidden under" the NYCHRL.  N.Y.C. Admin. Code § 8-107(7).  Further, "[r]ather than requiring a plaintiff to show an adverse employment action, [the NYCHRL] only requires [her] to show that something happened that was reasonably likely to deter a person from engaging in protected activity."  *Xiang v. Eagle Enters., LLC*, No. 19 Civ. 1752, 2020 WL 248941, at *9 (S.D.N.Y. Jan. 16, 2020) (alterations in original) (quoting *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 362 (S.D.N.Y. 2012)).  "Otherwise, a prima facie case of retaliation faces the same requirements under the NYCHRL as under the NYSHRL."  *Malena*, 886 F. Supp. 2d at 362.

Assuming Plaintiff sustains her initial burden of establishing a prima facie claim for retaliation, "a presumption of retaliation arises [and t]he defendant must then articulate a legitimate, non-retaliatory reason for the adverse employment action."  *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (internal quotation marks and citations omitted).  Upon such a showing

by the defendant, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." *Id*.

Defendant does not dispute that Plaintiff engaged in a protected activity. Rather, Defendant contends that Plaintiff cannot establish a materially adverse employment action or a causal connection between the protected activity and the adverse employment action. Def. Mem. at 23–28. Next, Defendant argues that, even if Plaintiff could establish a prima facie case, Defendant has offered a legitimate, non-retaliatory reason for the denial of her purported transfer request, and Plaintiff has failed to produce sufficient evidence to show that the reasons proffered by Defendant are pretextual. *Id*. at 28–29. The Court disagrees.

### A. Adverse Employment Action

Construing the facts in Plaintiff's favor, the Court concludes that she has established a prima facie case of retaliation.

With respect to Plaintiff's transfer requests, a reasonable jury could find that the positions Plaintiff sought were "materially better than the position she occupied and that, accordingly, an adverse employment action had occurred." *Beyer v. County of Nassau*, 524 F.3d 160, 165 (2d Cir. 2008). The following transfer requests, made after Plaintiff was reassigned to the Astor Place substation, are at issue: (1) the November 2013 transfer request to Galloza;, (2) the August 2014 request to Mak and (3) the March 2017 request to Karakatsanis. 56.1 Stmt. ¶¶ 71–72, 105; Pl. Dep. at 267:24–268:7. Plaintiff stated that she was told she could not return to the 42nd Street substation even after her workstation was cleaned, and that she was the only person in her department placed at Astor Place and isolated from the rest of her coworkers. Pl. Dep. at 302:11–303:10. Prior to Plaintiff's transfer, Galloza told her that he "didn't want [her] speaking to . . . a fucking person up there[.] I want you to keep your mouth shut." *Id*. at 303:7–9. After some time, this prevented Plaintiff from meaningfully engaging with anyone during the workday.

*Id.* at 303:20–304:5.  The Court rejects Defendant's argument that Plaintiff's claim fails because she did not identify a specific position to which she wanted to be transferred.  Def. Mem. at 24. Plaintiff testified that she repeatedly requested to be transferred back to the Bronx.  Pl. Dep. at 253:8–15.  She also stated that Omaira Sanchez had an administrative job in Westchester, and that Plaintiff recommended a swap with her to Galloza.  *Id.* at 264:2–22.  Under these facts, including Plaintiff's separation from her coworkers at Astor Place, the directive to not speak to anyone there, and the responses she received upon requesting a transfer, a reasonable jury could infer that a transfer would have resulted in an objectively "beneficial change."  *Kalola v. Int'l Bus. Machines Corp*, No. 13 Civ. 7339, 2017 WL 3394115, at *9 (S.D.N.Y. Feb. 28, 2017); *Beyer*, 524 F.3d at 165 ("The denial of a transfer may constitute an adverse employment action at the prima facie step of discrimination analysis when . . . a plaintiff adduces sufficient evidence to permit a reasonable factfinder to conclude that the sought for position is materially more advantageous than the employee's current position, whether because of prestige, modernity, training opportunity . . . or some other objective indicator of desirability.").

Plaintiff has also adduced sufficient evidence to preclude summary judgment on her claim that the retaliatory hostile work environment she experienced constituted a materially adverse change.  A plaintiff may establish that a retaliatory hostile work environment constitutes a materially adverse change by satisfying the same standard that is applied generally to hostile work environment claims regarding the severity of the alleged conduct.  *Rasco v. Radianz*, No. 05 Civ. 7147, 2009 WL 690986, at *15 (S.D.N.Y. Mar. 17, 2021).  Because Plaintiff has satisfied the hostile work environment standard, Defendant is not entitled to summary judgment on this claim.

20

### B. Causal Connection

Likewise, Plaintiff has adduced sufficient evidence to create a genuine dispute of material fact as to whether there was a causal connection between the protected activity and the adverse employment action.  "[A] causal connection can be established directly through evidence of retaliatory animus . . . or indirectly by showing that the protected activity was followed closely by discriminatory treatment . . . or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct."  *Schuppman v. Port Imperial Ferry Corp.*, No. 99 Civ. 3597, 2001 WL 262687, at *2 (S.D.N.Y. Mar. 15, 2001) (internal quotation marks, alterations, and citations omitted).  Here, Plaintiff's November 2013 transfer request was denied soon after she filed a complaint in September 2013.  56.1 Stmt. ¶¶ 42, 71–72.  "The Second Circuit has not . . . set a bright line rule as to when the temporal link becomes too attenuated to demonstrate causation."  *Alston v. N.Y.C. Transit Auth.*, No. 02 Civ. 2400, 2003 WL 22871917, at *8 (S.D.N.Y. Dec. 3, 2003).  Plaintiff testified that Galloza told her he would "throw her back into the fields," if she kept complaining.  Pl. Dep. at 233:14–19.  And, similarly, when she requested transfers from Galloza and Mak, she was threatened with being "thrown back into the fields" or "transferred to Staten Island."  *Id.* at 239:13–22, 269:4–7.  Moreover, Plaintiff stated that she felt retaliated against and blacklisted because of her complaints.  *Id.* at 171:20–172:3.  Thus, crediting Plaintiff's version of events, a reasonable juror could find that there was a causal connection between the protected activity and the adverse employment action.

### C. Legitimate, Non-Retaliatory Reason

Defendant contends that it has articulated a legitimate, non-retaliatory reason for the denial of Plaintiff's transfer requests because she failed to abide by the union's transfer requirement that she identify specific employees who had agreed to swap with her.  Def. Mem. at

28–29.  Thus, the Court must consider whether Plaintiff has adduced sufficient evidence to demonstrate pretext.  The Court finds that she has.

"A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weakness, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its actions."  *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013).  Plaintiff testified that in addition to transfer requests addressed to her superiors, she also made requests to the union.  Pl. Dep. at 261:21–262:8.  Plaintiff testified that she spoke to the union about a coworker's willingness to swap with Plaintiff, and mentioned to Galloza yet another coworker, Omaira Sanchez, as a potential swap candidate.  *Id.* at 263:2–264:9.  The response from Galloza was: "I don't want that F-ing B here."  *Id.* at 264:2–9.  Plaintiff stated that Galloza told her that Bruce Gavioli, a general manager, denied her 2013 transfer request, but Gavioli later said that he had never received this request.  *Id.* at 255:15–256:13.  Thus, a reasonable factfinder could find that these inconsistencies and contradictions support the conclusion that Defendant's stated reason for not transferring Plaintiff was pretextual.  *Kwan*, 737 F.3d at 846.

### D. NYCHRL

Because Defendant has failed to show that it is entitled to summary judgment on Plaintiff's retaliation claims under Title VII and NYSHRL, it is *a fortiori* not entitled to summary judgment under the more expansive NYCHRL.  *Kwan*, 737 F.3d at 843 n.3.

Accordingly, Defendant's motion for summary judgment on Plaintiff's retaliation claims is DENIED.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is DENIED.  The

Clerk of Court is directed to terminate the motion at ECF No. 105.

SO ORDERED.

Dated: March 31, 2021
　　　New York, New York

_____
ANALISA TORRES
United States District Judge